[No. 4596.]

TANNER SUBSTITUTED FOR DUPRAW ET AL. v. THE
TREASURY TUNNEL MINING AND REDUCTION
COMPANY.

1. **Eminent Domain—Public Use—Agencies Created by the State.**

The authority to exercise the right of eminent domain for public uses, is based upon the theory that property is granted the subject upon condition that it may be retaken to serve the necessities of the sovereign power; to this end agencies created by the state, the purpose of which is to serve the public, may exercise this right; and the vital question is, whether or not the use of the property sought to be condemned will be public in its nature.

2. **Same—Legislative Action Entitled to Great Weight.**

While the action of the legislature, in conferring the power of eminent domain for certain purposes, is not conclusive on the courts as to the question of public use, still it is entitled to great weight.

3. **Eminent Domain—Mining Tunnel—Public Use.**

Where a mining tunnel is to be used for draining mines and for the transportation of waste and ore for such proprietors as desire to avail themselves thereof, a condemnation for the right of way therefor under 3 Mills (Rev.), section 616, authorizing any corporation formed for the purpose of constructing a tunnel to acquire any necessary real estate under the eminent domain act, is a condemnation for a public use.

*Error to the District Court of Ouray County.
Hon. Theron Stevens, Judge.*

Mr. GEO. STIDGER, for plaintiffs in error.

Messrs. HENRY & SIGFRID, for defendant in error.

Mr. THOS. Y. BRADSHAW, *amicus curiae.*

Defendant in error, as petitioner, instituted proceedings in the court below under the eminent domain act, to condemn a right of way for tunnel purposes through the Corn Cob lode. To these proceedings the owners of the premises were made parties re-

spondent. According to its articles of incorporation the petitioner is a corporation, organized under the laws of this state "to run, construct, work, operate and maintain tunnels for mine development, drainage, prospecting and other purposes; to demand, contract for, and receive royalties or other compensation for the use of such tunnel or tunnels, from any and all persons, associations and corporations in any manner using same, or benefited thereby, in the drainage of properties operated by them; to excavate, drive, or otherwise construct cross-cuts and branches from any such tunnel for mining, prospecting, development and other purposes."

From the averments of the petition, as well as the testimony, it appears that the purpose of petitioner in constructing the tunnel, among others, is to furnish drainage for mines adjacent to its line; that its portal is in Ouray county, but as projected, will extend into the county of San Miguel into a locality highly mineralized, where there are mines being successfully operated; that this tunnel, when completed, will cut the veins in these properties at a depth far below the present workings thereon, and that if the owners of these properties desire to avail themselves of the facilities conferred by the tunnel, their mines can be drained thereby and waste and ore transported through such tunnel. It also appears that these mines are located at a high altitude, and that many of the inconveniences resulting from such location may be avoided by operations through the projected tunnel of petitioner. Judgment was rendered for the petitioner and respondents bring the case here for review on error.

In 1891 the general assembly passed an Act which in terms provided that any corporation formed for the purpose of constructing a road, ditch, reservoir, pipe-line, bridge, ferry, tunnel, telegraph line,

or railroad line, should have the authority to acquire any real estate necessary for its purposes in the manner provided by law, under the Eminent Domain Act. —§616, 3 M. A. S.; Laws 1891, p. 98, §3.

CHIEF JUSTICE GABBERT delivered the opinion of the court:

The authority to exercise the right of eminent domain for public uses is based upon the theory that property is granted the subject upon condition that it may be retaken to serve the necessities of the sovereign power. To this end agencies created by the state, the purpose of which is to serve the public, may exercise this right.—*Denver Power & I. Co. v. D. & R. G. R. R. Co.,* 30 Colo. 204. The vital question is, whether or not the use of the property sought to be condemned will be public in its nature. As an aid in solving this question, we may consider the character of the business in which the petitioner proposes to engage, through and by means of its tunnel. If this business is wholly for its benefit, then the use of the property sought to be appropriated would be private; while, on the other hand, if the business proposed to be carried on by petitioner through its tunnel is essentially for public benefit and advantage, then the use would be public.—*DeCamp v. Hibernia R. Co.,* 47 N. J. Law 43; *Sholl v. German Coal Co.,* 118 Ill. 427, 15 Cyc. 581.

No definition, however, has as yet been formulated which would serve as an infallible test in determining whether a use of property sought to be appropriated under the power of eminent domain is public or private. No precise line is drawn between the uses which would be applicable in all cases. Doubtless this arises from the fact that the courts have recognized that the definition of "public use" must be such as to give it a degree of elasticity capa-

ble of meeting new conditions and improvements, and the ever-increasing needs of society.—*Olmstead v. Camp,* 33 Conn. 532 (551). Consequently we find, in examining the authorities, that, in determining whether or not a use is public, the physical conditions of the country, the needs of a community, the character of the benefit which a projected improvement may confer upon a locality, and the necessities for such improvement in the development of the resources of a state, are to be taken into consideration.—*Ouray v. Goodwin,* 26 Pac. (Ariz.) 376; *Scudder v. Trenton Delaware Falls Co.,* 1 N. J. Eq. 694 (729); *Clark v. Nash,* 198 U. S. 361.

In this state we have conditions to meet, and resources to develop, which, in their nature, require the employment of new and appropriate means. This has opened a field for the prosecution of new enterprises. The mineral resources of the state are of prime importance. Generally, they can only be reached by sinking shafts to great depth, or running tunnels of great length. It appears from the testimony that the tunnel which petitioner purposes to run will cut the mountain at a great depth; that it will intersect numerous veins of mineral; that it will reach mines now being operated; that through this tunnel these mines and others which may be developed along its line can be operated if the owners should so desire; that it will drain these properties and furnish ventilation if connection is made therewith; in short, that the owners of mining properties along the line of this tunnel and adjacent thereto may, if they so desire, secure a distinct benefit and advantage in the operation of their mines by availing themselves of the facilities which may be afforded by the tunnel of the petitioner. The general assembly has provided for the organization of companies for the purposes for which the petitioner was organ-

ized. It has provided that a corporation of this character may exercise the power of eminent domain in securing rights of way for its tunnel. It has evidently recognized that the business of a tunnel company may be for the benefit and advantage of the public, for we find that in designating what corporations may exercise the power of eminent domain, tunnel companies have been mentioned in connection with bridge, ferry, railroad, and other companies, whose business is unquestionably to serve the public. While this judgment is not conclusive upon the courts, it is entitled to careful consideration and great weight as the judgment of a co-ordinate branch of the government of the necessities of the state for the development of its, resources and the needs of the people in this respect.—*Dayton M. Co. v. Seawell,* 11 Nev. 394.

Subject to the authority of the courts to determine certain questions, the general assembly is the exclusive judge of the necessity or emergency justifying the exercise of the power of eminent domain.— *Sholl v. German Coal Co., supra.* It has vested corporations organized for the purposes mentioned in the articles of incorporation of petitioner with the right to exercise this power. For the development of the great mining resources of this state tunnels of the character contemplated by petitioner are not only expedient, but necessary. The necessity of vesting corporations of the character of petitioner with the right to exercise the power of eminent domain is apparent; for without this power enterprizes of the character contemplated by the petitioner could be thwarted and the development of the mining resources of the state prevented by those owning property crossing the line of a projected tunnel.

The number who may avail themselves of the benefits of the tunnel will be limited, but this is

merely the result of natural conditions arising from the character and location of mining properties. The use and benefit of the tunnel will be in common and may be enjoyed by all whose properties are so located with reference thereto that they may avail themselves, if they so desire, of the opportunities thus afforded for the development and operation of their properties. The business in which petitioner will engage in affording these facilities is essentially for the benefit and advantage of such owners. For these reasons we are of the opinion that the use of the property sought to be condemned by the petitioner is public.—*Gilmer v. Lime Point,* 18 Cal. 229 (251); *O'Rielly v. Kankakee Valley D. Co.,* 32 Ind. 169 (185); *Coster v. Tide Water Co.,* 18 N. J. Eq. 54 (68); *Hartwell v. Armstrong,* 19 Barb. (N. Y.) 166.

The judgment of the district court is affirmed.

*Affirmed.*

Decision *en banc.*