WAYNESBURG SOUTHERN RAILROAD COMPANY, *a corporation*

*v.*

RAY LEMLEY, *et al., etc.*

(No. 12990)

Submitted October 6, 1970.    Decided December 15, 1970.

Rehearing Denied February 19, 1971.

*Baker & Armistead, Charles S. Armistead, Reeder & Shuman, Robert L. Shuman,* for plaintiffs in error.

*Haden & Singleton, Julius W. Singleton, Jr., Furbee, Amos, Webb & Critchfield, Russell L. Furbee, John D. Amos,* for defendant in error.

CAPLAN, JUDGE:

In an action instituted in the Circuit Court of Monongalia County the plaintiff, Waynesburg Southern Railroad Company,

a corporation, sometimes herein referred to as Waynesburg, sought to acquire by eminent domain a certain easement hereinafter more fully described. It was the judgment of the trial court, as noted in its order entered on May 9, 1970, that Waynesburg "has the right to condemn the easement in question" and that it is permitted "to take possession of, appropriate and use the easement sought to be condemned for the purposes stated in the petition, to-wit: To build a railroad track on and over said easement to be used for the transportation of coal and other freight as indicated in the petition." It is from this judgment that the defendents prosecute this appeal. The defendants are individuals who have conveyed certain properties to the plaintiff, some of whom are the Trustees of the Core Cemetery Association.

Waynesburg is a corporation organized under the laws of the Commonwealth of Pennsylvania and is duly qualified to do business in the State of West Virginia. It is wholly owned by the Pennsylvania Central Transportation Company, formerly the Pennsylvania Railroad Company. The Monongahela Railway Company, owned by Penn Central, The Baltimore and Ohio Railroad Company and the Pittsburgh and Lake Erie Railroad Company, which companies guaranteed the bonds financing the construction of the plaintiff railroad, is the operating company managing the plaintiff's railroad system. The plaintiff has completed the construction of a railway which extends in a southerly direction from Waynesburg, Pennsylvania to the vicinity of the West Virginia state line where it separates and forms two branches. One branch leads from Brave, Pennsylvania to Blacksville, Monongalia County, West Virginia over a right-of-way acquired from the Monongahela Railroad Company. It extends to a point approximately two miles east of Blacksville and terminates at a tipple of Consolidation Coal Company's Blacksville No. 1 mine. The other branch, known as the Miracle Run branch, extends in a westerly direction in Clay and Battelle Districts of Monongalia County and terminates at the coal mine of Eastern Gas Fuel Associates near Ragtown, West Virginia.

The Miracle Run right-of-way over which the plaintiff laid its tracks was purchased from various property owners

including some of the defendants. Core Cemetery is situate a short distance north of the Miracle Run branch. This cemetery was served by two roadways or easements, one extending from a state highway across the Tuttle farm and the other from a state road, commonly called Gump Lane, across the Lemley farm. The easement across the Tuttle land was described by metes and bounds in a deed recorded in the office of the Clerk of the County Court of Monongalia County. The easement across the Lemley farm was described in a deed whereby Ray Lemley and Gayle Lemley, his wife, conveyed 1.14 acres of land to Waynesburg. This deed contained the following language: "This conveyance is made subject to the rights of the Trustees of the Core Cemetery to use the existing roadways located on the hereinbefore described property as a means of ingress, egress and regress to the existing cemetery located to the west of the property herewith conveyed."

When the railroad was constructed by Waynesburg in 1967 its tracks were placed over and upon the aforesaid easements of the defendants on the Lemley farm rendering said easements unuseable. The railroad tracks allegedly blocked the defendants' entrance to the cemetery without providing a means of access. The railroad, however, asserts that it constructed a stone-base road as a means of access to the cemetery. It is undisputed that the plaintiff did not and has not yet obtained the consent of the defendants to enter and destroy either of their easements.

This condemnation proceeding was instituted by the plaintiff pursuant to an order of the trial court entered in a prior civil action. In that action, instituted subsequent to the construction of the aforementioned railroad tracks, the Trustees of the Core Cemetery Association sought a mandatory injunction compelling Waynesburg to remove its railroad tracks from the subject easements. At the conclusion of the testimony taken in that case the court found that Waynesburg had illegally obstructed and destroyed Core's easements and that the Trustees were entitled to the requested injunction. In so ruling, however, the court concluded its order by noting that since the railroad asserted that it had the power of eminent domain it would be granted sixty days in which to assert

its rights under that power. Approximately sixty days thereafter the railroad instituted this condemnation proceeding.

The condemnation petition contains the following allegation in relation to the use for which this easement is being taken: "It is used for maintenance and operation of petitioner's railroad which serves the public generally and a coal field in West Virginia estimated to contain in excess of five hundred million tons of bituminous coal which is available for deep mining operations, the development of which coal field is contributing significantly to the economy of the County, State and Nation, and will provide rail traffic of considerable magnitude for many years." The petition further contains a metes and bounds description of the property over which the easements are situate.

The defendants filed a demurrer and an answer to the petition therein setting forth many grounds of defense. While many assignments of error are noted on this appeal the defendants rely principally on three grounds, namely, that Waynesburg is a private railroad and that the easements are being condemned for private use; that this eminent domain proceeding cannot be maintained for the reason that the property had already been taken and the railroad constructed prior to the institution of these proceedings; and that the plaintiff is estopped from maintaining this action because when it acquired the real estate upon which the easements are situate it expressly covenanted to protect and preserve said easements as then located.

In resolving the issue raised by the defendants' contention that Waynesburg is a private railroad operating for a private rather than a public purpose and is therefore without eminent domain powers, we must keep in mind that the right of eminent domain, recognized and preserved in our Constitution, is wholly statutory. To lawfully avail itself of these powers Waynesburg must show that it is an entity so authorized under the provisions of Code, 1931, Chapter 54, as amended.

Code, 1931, 54-1-1, provides: "The United States * * *, and every corporation heretofore or hereafter organized under the laws of, or authorized to transact business in, the State,

for any purpose of internal improvement for which private property may be taken or damaged for public use as authorized in section two of this article, shall have the right of eminent domain * * *." Section two, referred to above, describes the public uses for which private property may be taken, the pertinent part of which is in the following language: "For the construction, maintenance and operation of railroad and traction lines (including extension, lateral and branch lines, spurs, switches and sidetracks) * * * and other works of internal improvement, for the public use; * * *."

It was stipulated by the parties that Waynesburg was "duly incorporated under the laws of the Commonwealth of Pennsylvania, and was authorized to do business in the State of West Virginia on the 1st day of October, 1966". The record reveals that Waynesburg applied for and received from the Interstate Commerce Commission a certificate of public convenience and necessity authorizing the construction and acquisition of lines of railroad in Greene County, Pennsylvania and Monongalia County, West Virginia. The Commission certified, in granting said certificate, that "the present and future public convenience and necessity require the construction by the Waynesburg Southern Railroad Company of a line of railroad and its acquisition of certain trackage from The Monongahela Railway Company, in Greene County, Pa., and Monongalia County, W. Va." In its report the Commission found that the subject railroad would presently serve two mines planned by two major coal producers and also additional mines expected to be developed to tap the five hundred million tons of coal reserves in West Virginia.

By letter dated October 26, 1966, the then Governor of West Virginia, the Honorable Hulett C. Smith, and the Public Service Commission of said state were notified of Waynesburg's application to the Interstate Commerce Commission for a certificate of public convenience and necessity. Therein they were informed that if they wanted to be heard in that proceeding they should so advise the Commission within twenty days. No appearance was made on behalf of the State of West Virginia.

In addition to the foregoing, the record reveals the existence of certain defined stations at Brave, Pennsylvania and Blacksville, West Virginia. Tariffs are on file with the Interstate Commerce Commission and the Public Service Commission of West Virginia designating the rates to be charged from these stations throughout the United States for many commodities. Although the operation of these stations has been temporarily discontinued, Waynesburg, upon receiving a formal request for service, is still obligated to furnish such service.

Under the provisions of Code, 1931, 31-2-1, every railroad company authorized to do business in this state is a common carrier and is authorized to acquire, construct, maintain and operate railway lines and other suitable facilities and to engage in transporting persons and commodities. Section 2 of the above chapter and article provides: "Every such railroad company shall have the right to purchase * * * acquire by condemnation * * * all real estate and other property necessary for its corporate objects and purposes * * *."

The foregoing clearly demonstrates that Waynesburg Southern Railroad Company is an entity authorized under the provisions of Code, 1931, Chapter 54, as amended, and Code, 1931, 31-2-2, to acquire property by condemnation. It becomes necessary now to further consider the record to determine whether Waynesburg is taking private property for public use.

It is contended by the defendants that the subject easement was taken by Waynesburg solely for the purpose of enhancing a private business enterprise; that it does not serve the public generally; and that eminent domain cannot, therefore, be employed as a means of acquiring this property. Inasmuch as the legislature has declared railroad companies to be common carriers with the right of eminent domain and inasmuch as Waynesburg has received a franchise or certificate to operate as a railroad company, it is incumbent upon the defendants to show that the plaintiff is taking the easement for a private purpose.

That the owners of property to be condemned must bear the burden of proof that the condemnation is for private rather than public use was succinctly stated by the Court in *Caretta Railway Co. v. Virginia-Pocahontas Coal Co.*, 62 W. Va. 185, 57 S.E. 401, where in Point 3 of the Syllabus the following language was used: "A railroad company, chartered and organized under the laws of this state, is authorized to condemn land under the power of eminent domain, and where it has filed a proper application for such purpose, and shows that it has complied with the law controlling the organization of such companies, it has the *prima facie* right to exercise such power, and it then devolves upon the owner to rebut the *prima facie* case by showing that the land sought to be condemned is not for public use." For the proposition that it is generally the burden of the landowner to show that the land is to be devoted to private rather than public use see *Brooke Electric Company v. Beall*, 96 W.Va. 637, 123 S.E. 587; *Pittsburg & West Virginia Gas Company v. Cutright*, 83 W.Va. 42, 97 S.E. 686; and *Carnegie Natural Gas Company v. Swiger*, 72 W.Va. 557, 79 S.E. 3.

An examination of the evidence presented in the instant case fails to reveal that the defendants have borne this burden of proof. The plaintiff, by its witness and exhibits, has established that this is a railroad dedicated to the public use as contemplated by our statutes. Although, as indicated herein, the two stations which existed for public use have been temporarily discontinued, these stations have not been discontinued under the law and the plaintiff must serve the public at such stations upon receipt of a request to do so. The defendants have offered witnesses to show that on certain occasions they have requested and have been refused service by the plaintiff railroad. This testimony was vague and the requests were infrequent. These potential customers, however, are entitled to service and, if they are refused, their relief is to file a formal complaint before the proper regulatory body. Such evidence does not constitute proof that this railroad was established and is operating for private rather than public use.

The defendants further complain that this railroad was established to serve only two customers, the two major coal

companies operating in this area. It has been held and it continues to be a sound proposition of the law that whether a use is public or private is to be determined by the character of such use and not by the number of persons who avail themselves of the use. *Caretta Railway Co. v. Virginia-Pocahontas Coal Co.*, 62 W.Va. 185, 57 S.E. 401.

In the instant case there is ample evidence that Waynesburg has dedicated its railroad line to the public use. This was made evident by the testimony of its witness and by many exhibits, including the findings of the Interstate Commerce Commission. Furthermore, this railroad is required by law to serve all coal operations along its line as demonstrated by the language of Code, 1931, 31-2-5, which reads: "* * * Every railroad corporation, along whose line of railroad the industry of mining coal or manufacturing coke is carried on, shall without discrimination between or among shippers, and without unnecessary delay, make a reasonable provision for the transportation of all such coal and coke offered for transportation over its railroad, and no such railroad corporation shall discriminate in rates, distribution of cars or otherwise against or among shippers of coal or coke offered for shipment on its line or lines. * * *"

Upon the consideration of the entire record, we are of the opinion that the plaintiff railroad is a corporation engaged in the business of operating a railroad and as contemplated by the statutes has the authority to acquire property by eminent domain.

The next contention of the defendants is that the plaintiff railroad cannot avail itself of eminent domain for the reason that the action was instituted after it had wrongfully entered and constructed its tracks on the subject easement. The defendants therefore assert that the action was not timely brought and cannot be maintained.

It is not denied that the plaintiff constructed its railroad over the defendants' easement without obtaining the latter's consent. This was an unlawful entry and constituted a trespass which resulted in an action by the defendants to require the plaintiff by mandatory injunction to remove its tracks.

Certainly this was a violation of the provisions of Article III, Section 9 of our Constitution and Code, 1931, 54-1-3. This, however, does not preclude a subsequent legal taking by the defendant railroad in an eminent domain proceeding. That this is the general rule is well documented by the following language found in 26 AM. JUR. 2d, *Eminent Domain*, Section 87: "That the petitioner was already in possession of the property at the time the condemnation proceedings were instituted does not defeat the right to condemn, and this is the rule whether the possession was unlawful or by consent of the owner." In *Secombe v. The Milwaukee & St. Paul Railway Company*, 23 Wall. 108, 23 L. Ed. 67 the Court said: "* * * prior occupation without authority of law would not preclude the Company from taking subsequent measures authorized by law to condemn the land for their use." See also *Searl v. School District*, 133 U.S. 553, 33 L. Ed. 740, 10 S. Ct. 374; *State Highway Department v. Campbell*, 173 Miss. 397, 161 So. 461; *Ouachita Parish School Board v. Clark*, 197 La. 131, 1 So. 2d 54; and 29A C.J.S., *Eminent Domain*, Sec. 230.

It is noted that the court below took cognizance of the wrongful act of the plaintiff but acknowledged its right to subsequently take the easement in an eminent domain proceeding. This is in accord with the great weight of authority. The defendants' contention therefore is without merit.

As a final contention it is asserted by the defendants that the plaintiff is estopped from maintaining this action in eminent domain. They reason that the plaintiff has forever forfeited its right to the land over which this easement runs because it was expressly convenanted in the deed conveying the property that such conveyance was subject to the rights of the Trustees of the Core Cemetery to use the right-of-way as a means of ingress and egress to and from the cemetery. For the reasons hereinafter stated this contention is untenable.

An entity which by statute has the authority to acquire property by condemnation cannot alienate or terminate such authority even though it may attempt to do so by covenant or contract. The right of eminent domain is granted to certain types of corporations for the public welfare and the recipient

of that right cannot on its own volition relinquish it. This proposition was cogently expressed by this Court in Point 4 of the Syllabus of *West Virginia Transportation Co. v. Ohio River Pipe Line Co.,* 22 W.Va. 600, as follows: "Whenever the Legislature by statute-law has authorized any person or corporation to condemn the lands of others in order to carry on its business, the courts will regard this as a legislative declaration, that this character of business is such, as that the public has so great and direct an interest in, that the courts must hold it as contrary to public policy to permit any restriction of it by private contract." That syllabus point was quoted with approval in *State ex rel. Wells v. The City of Dunbar,* 142 W.Va. 332, 95 S.E.2d 457. In 1 NICHOLS ON EMINENT DOMAIN, Section 1.141 [4] this proposition was stated in this manner: "The power [eminent domain] is given to be used when public necessity or convenience requires it, and when such an occasion arises private contracts cannot stand in the way. The corporation is acting as a trustee of public powers, the use of which cannot be restricted by anything the corporation may have done in its private capacity. Such contracts cannot be specifically enforced in equity and are probably absolutely void, being both *ultra vires* and against public policy. If there is any attempt to contract away the power, it may be resumed at will." See also *Gibbs v. The Consolidated Gas Company of Baltimore City,* 130 U.S. 396, 32 L. Ed. 979, 9 S. Ct. 553, and *United States v. Trans-Missouri Freight Association,* 166 U.S. 290, 41 L. Ed. 1007, 17 S. Ct. 540.

It is clear therefore that Waynesburg is not estopped from prosecuting this eminent domain proceeding.

It must be borne in mind that this appeal does not concern the issue of whether the defendants have been deprived of their means of access to the cemetery or the amount of damages if their way is so barred. These are matters to be determined in this eminent domain proceeding.

A motion to reverse was made by the defendants. For the reasons stated herein, that motion is overruled and the judgment of the Circuit Court of Monongalia County is affirmed.

*Motion to reverse overruled.*
*Judgment affirmed.*