## No. 26044

**Leonard O. M. Larson, The Hillis J. Schmidt Trust, and Joan Feldman and Dwight A. Hamilton as Trustees of The Hillis J. Schmidt Trust v. Chase Pipe Line Company, The District Court in and for the County of Arapahoe and State of Colorado, and The Honorable William B. Naugle, Judge thereof**

(514 P.2d 1316)

Decided October 9, 1973.                    Rehearing denied October 29, 1973.

Fuller and Evans, Clyde A. Faatz, Jr., for petitioners.

Holme, Roberts & Owen, Donald C. McKinlay, Robert F. Starzel, for respondents.

*En Banc.*

MR. JUSTICE GROVES delivered the opinion of the Court.

The respondent pipe line company commenced two actions to condemn a pipeline right-of-way 50 feet in width across the adjoining properties of the petitioners. The matter was consolidated in the trial court, which issued an order of temporary possession. The petitioners brought an original proceeding here seeking invalidation of the order and we issued a rule to show cause why their requested relief should not be granted. We now discharge the rule.

I.

The respondent company moved to dismiss the proceedings here and to vacate the order to show cause for the reason that this proceeding was not authorized by C.A.R. 21. We now deny this motion. We have reviewed orders of temporary possession in original proceedings on several occasions. A recent example is *Arizona-Colorado Land and Cattle Company v. District Court,* 182 Colo. 44, 511 P.2d 23 (1973). As stated in *Swift v. Smith,* 119 Colo. 126, 201 P.2d 609 (1948), because an order for temporary possession is clearly interlocutory, any review must be by an original proceeding. *See Glendale v. Denver,* 137 Colo. 188, 322 P.2d 1053 (1958); and *Potashnik v. Public Service Company of Colorado,* 126 Colo. 98, 247 P.2d 137 (1952).

II.

Petitioners contend that the proof did not support the required allegation that the "compensation to be paid for said right-of-way easement cannot be agreed upon by the parties interested." The petitioners cite *Stalford v. Board of Commissioners,* 128 Colo. 441, 263 P.2d 436 (1953). The court found that there had been negotiations, and it is implicit in its findings that further negotiation would have

been futile. There was sufficient evidence to support the findings. *Vivian v. Board of Trustees,* 152 Colo. 556, 383 P.2d 801 (1963).

### III.

The petitioners have contended that Chase Transportation Company — and not Chase Pipe Line Company — should have brought the eminent domain proceedings. Chase Transportation Company is a joint venture or partnership composed of the respondent company and Skelly Pipe Line Company. Under the venture agreement, title to the pipeline ultimately will vest in the Chase Transportation Company. However, title from these proceedings will pass to the petitioner, which is a corporation. The respondent company has a 90% interest and Skelly Pipe Line Company has a 10% interest in the venture. Skelly Pipe Line Company's sole contribution was a segment of the line already constructed in Kansas. The respondent company furnishes all the construction costs for the line in Colorado, and will operate it. The company, a Kansas corporation, is authorized to do business in Colorado.

We affirm the trial court's conclusion that the company is a proper entity to bring the action under C.R.S. 1963, 50-5-5.

### IV.

We disagree with the petitioners' argument that the property is not being taken for a public use.

"Private property shall not be taken or damaged, for public or private use, without just compensation . . . . and whenever an attempt is made to take private property for a use alleged to be public, the question whether the contemplated use be really public shall be a judicial question, and determined as such without regard to any legislative assertion that the use is public." Colo. Const. art. II, § 15.

In *Potashnik v. Public Service Co., supra,* it was held that this constitutional provision requires judicial approval of the purpose as a public use.

The record discloses that this pipeline is to be operated under the jurisdiction of the Interstate Commerce

Commission. Therefore its operation as a common carrier will be mandatory under federal law. 49 U.S.C. § 1(3)(a) and (4). It was stated in *Tanner v. Treasury Tunnel Co.,* 35 Colo. 593, 83 P. 464 (1906), as follows:

"No definition, however, has as yet been formulated which would serve as an infallible test in determining whether a use of property sought to be appropriated under the power of eminent domain is public or private. No precise line is drawn between the uses which would be applicable in all cases. Doubtless this arises from the fact that the courts have recognized that the definition of 'public use' must be such as to give it a degree of elasticity capable of meeting new conditions and improvements, and the ever-increasing needs of society. [Citation omitted]. Consequently we find, in examining the authorities, that, in determining whether or not a use is public, the physical conditions of the country, the needs of a community, the character of the benefit which a projected improvement may confer upon a locality, and the necessities for such improvement in the development of the resources of a state, are to be taken into consideration."

The court's conclusion that this will be a public use is amply supported by the record. *See Milheim v. Moffat Tunnel District,* 72 Colo. 268, 211 P. 649 (1922), *aff'd,* 262 U.S. 710, 43 S.Ct. 694, 67 L.Ed. 1194 (1923).

## V.

■ The petitioners contend that they were entitled to have the matter of necessity determined by a commission or jury. The cases they cite were under the statute as it existed prior to 1961 when it was amended by the addition of, "All questions and issues, except the amount of compensation, shall be determined by the court . . . ." C.R.S. 1963, 50-1-1.

## VI.

■ It was indicated to one of the petitioners during negotiations that a 35-foot easement would be required. The respondent company sued for a 50-foot easement. The petitioners claim that this invalidates the order of temporary possession.

At the hearing, there was testimony to the effect that the

width of 35 feet was given in error, and that an easement 50 feet in width was required. This point would be entitled to serious consideration if it were shown that correction of the error during negotiations would have had any different effect thereon. On the contrary, the record shows affirmatively that the result of negotiations would have remained unchanged had the matter been stated correctly. This being the case, it appears that the only attack by the petitioners under this point would be to contend that the respondent company was acting fraudulently or in bad faith. *Arizona Land and Cattle Company v. District Court, supra.* The petitioners have not made such an attack.

The rule is discharged.

MR. JUSTICE KELLEY does not participate.