**PUBLIC SERVICE COMPANY OF COLORADO, Petitioner,**

v.

**George E. SHAKLEE and Zelda H. Shaklee, Respondents.**

**No. 88SC179.**

Supreme Court of Colorado,
En Banc.

Dec. 18, 1989.

Richard W. Bryans, Kelly, Stansfield & O'Donnell, Denver, for petitioner.

William Albion Carlson, Greeley, for respondents.

Justice MULLARKEY delivered the Opinion of the Court.

We granted certiorari to review the decision of the court of appeals in *Public Service Co. of Colorado v. Shaklee*, 759 P.2d 774 (Colo.Ct.App.1988), reversing the district court's decree in condemnation. The court of appeals found that the taking in a condemnation proceeding by the Public Service Company of an easement for the transmission and distribution of electricity was improper because it was done for a private and not a public use. The court of appeals also found that the condemnation was improper because Public Service Company lacked authority to extend its facilities into an area which it was not certificated to serve. We now reverse the judgment of the court of appeals.

I.

■ This dispute stems from an effort by the petitioner, the Public Service Company of Colorado (Public Service), an electrical and gas utility company, to provide electrical service to the Adolph Coors Company (Coors) for mining activities in Weld County. Coors contacted Public Service in the Spring of 1979 seeking to secure a supply of electricity for its Weld County mine. As discussed below, under Colorado law, the Public Utilities Commission is authorized to issue certificates of public convenience and necessity which designate the geographical service area of a public utility. § 40–5–102, 17 C.R.S. (1984). The holder of such a certificate is commonly described as being "certificated" to serve customers in its designated area. *Public Serv. Co. v. Public Util. Comm'n*, 765 P.2d 1015, 1021 (Colo.1988). A utility which has been assigned a specific territory has an exclusive right to provide service in that territory unless it is established that the certificated utility is unable or unwilling to provide adequate service. *Id.*

To provide Coors with the electrical service, Public Service determined that a 115 kv transmission line extension would have to be built from Public Service's Hudson substation to the Coors mine site, a distance of about 12.5 miles. Most of the transmission line is located within territory which was certificated to Public Service for utility service, pursuant to section 40–5–102. However, the line extends one mile into territory then certificated to Home Light and Power Company (Home Light), which at the time was a wholly-owned subsidiary of Public Service. The Coors' mine itself is located in territory then certificated to Home Light, however, Public Service obtained permission from Home Light to serve the Coors facility.[1] Public Service reached agreement with Coors to provide the extension of service to the Coors mining operation. Under the terms of that agreement, Coors paid for most of the $1.3 million cost of the transmission line, while

1. Home Light merged with Public Service in 1986, and all of its certificates of public convenience have been transferred to Public Service.

Public Service retained title and the right to provide service to future customers from the extension line. Public Service also agreed to operate and maintain the transmission line.

In the Summer of 1980, Public Service met with landowners affected by the power line construction including the respondents, the Shaklees. When Public Service's efforts to reach agreement with the Shaklees to obtain a 75–foot–wide easement failed, Public Service brought eminent domain proceedings pursuant to sections 38–5–104 to –107, 16A C.R.S. (1982). On March 10, 1981, the district court granted Public Service's request for immediate possession of the easement across the Shaklee property pursuant to section 38–5–106.

Although the Shaklees properly filed an original proceeding in this court to challenge the immediate possession order, they did not seek an immediate stay from the district court pursuant to C.R.C.P. 62 ordering the halt of construction. By the time this court issued a stay order on April 9, 1981, the transmission line had been built. In *Shaklee v. District Court*, 636 P.2d 715 (Colo.1981), we agreed with the Shaklees that the question of whether the contemplated use of the Public Service easement was a public use, as required by the Colorado Constitution, should have been resolved by the district court before it ruled on Public Service's motion for immediate possession.

On remand, the district court found that "the proposed condemnation in this case is for a public use or purpose." The Shaklees

2. Section 40–5–101(1), 17 C.R.S. (1984), provides:

(1) No public utility shall begin the construction of a new facility, plant, or system or of any extension of its facility, plant, or system without first having obtained from the commission a certificate that the present or future public convenience and necessity require or will require such construction. Sections 40–5–101 to 40–5–104 shall not be construed to require any corporation to secure such certificate for an extension within any city and county or city or town within which it has theretofore lawfully commenced operations, or for an extension into territory, either within or without a city and county or city or town, contiguous to its facility, line, plant, or

were awarded $8,800 as compensation for the easement.

The Shaklees successfully appealed the decision of the district court to the court of appeals, arguing that Public Service was required to seek a certificate of public convenience and necessity pursuant to section 40–5–101(1), 17 C.R.S. (1984), prior to proceeding with its eminent domain action. That statutory provision governs new construction and extensions of a "facility, plant, or system." The Shaklees also asserted and the court of appeals agreed that the district court should not have granted condemnation of the easement because it was not for a public purpose as required by the Colorado Constitution, Article II, Section 14. We examine and reject each of these claims in turn.

## II.

The Shaklees argue that Public Service's failure to obtain a certificate of public convenience and necessity pursuant to section 40–5–101(1), 17 C.R.S. (1984), precluded Public Service from proceeding with its condemnation action.[2] We disagree.

In *Miller v. Public Service Co.*, 129 Colo. 513, 272 P.2d 283 (1954), *appeal dismissed*, 348 U.S. 923, 75 S.Ct. 338, 99 L.Ed. 724 (1955), we construed this certificate requirement and we held that:

[S]uch certificate is not necessary for the purposes of condemnation and relates solely to the question of use after the property has been acquired by condemnation. ... The so-called certificate is only

system and not theretofore served by a public utility providing the same commodity or service, or for an extension within or to territory already served by it, necessary in the ordinary course of its business. If any public utility, in constructing or extending its line, plant, or system interferes or is about to interfere with the operation of the line, plant, or system of any other public utility already constructed, the commission, on complaint of the public utility claiming to be injuriously affected, after hearing, may make such order prohibiting such construction or extensions or prescribing such terms and conditions for the location of the lines, plants, or systems affected as to it may seem just and reasonable.

a permit or license to use and enjoy land that has been condemned; it is not a condition precedent to the right to condemn; it has no relationship whatever with the matter of condemnation.

*Miller,* 129 Colo. at 517, 272 P.2d at 285.

The court of appeals stated that *Miller* is distinguishable on its facts because in *Miller* the condemnation proceedings were stayed, pending appeal, before construction of the new facility had even begun, whereas here the condemnation proceedings have been completed and the transmission line is up and in operation. *Public Serv. Co. of Colorado v. Shaklee,* 759 P.2d at 776.

We do not agree that this factual difference requires a different outcome here from that reached in *Miller.* The requirement that a utility such as Public Service obtain a certificate of public convenience and necessity may be relevant to the legality of the construction of the transmission lines. However, obtaining a certificate is not required to go forward with a condemnation proceeding.[3] Because the court of appeals was considering only an appeal from a condemnation proceeding, the question of the legality of the construction project itself was not before it. The right to proceed with a condemnation action before seeking a certificate of public convenience and necessity is justified because one factor which the Public Utilities Commission may consider in reviewing an application for the certificate is the cost of the project including the cost of the easements acquired by condemnation. *See Ohio & Colorado Smelting & Ref. Co. v. Public Utils. Comm'n of Colorado,* 68 Colo. 137, 153, 187 P. 1082, 1088–89 (1920) (purpose of the certification statute is to prevent the burden to the public which may arise by reason of speculative or unnecessary extensions and improvements by means of an investigation by the commission and the granting of a certificate of necessity). *Miller* is applicable here and establishes that Public Service did not need to seek a certificate as a condition to instituting its condemnation proceedings.[4]

III.

The Shaklees also argue that the taking in condemnation of this easement was not for a "public use." Sections 38–5–104 to –107, 16A C.R.S. (1982), authorize a utility such as Public Service to condemn interests in real property including rights-of-ways for electrical lines. However, the Constitution of Colorado imposes limits on the right of government entities and others which are delegated the power of eminent domain to condemn property. Article II, Section 14 states:

> Private property shall not be taken for private use unless by consent of the owner, except for private ways of necessity, and except for reservoirs, drains, flumes or ditches on or across the lands of others, for agricultural, mining, milling, domestic or sanitary purposes.

In determining whether the power of eminent domain is properly exercisable in a particular case, when none of the exceptions of Section 14 authorizing the taking of property for private use are applicable, the court in the eminent domain action must determine whether the proposed use is a public use. Colo.Const., Art. II, § 15; *Shaklee v. District Court,* 636 P.2d at 717. The owners of the property to be condemned have the burden of proving that

---

3. Although obtaining a certificate of necessity is not a condition precedent to going forward with a condemnation proceeding, the likelihood that such a certificate will be issued by the PUC may be relevant to the trial court's determination of public use. If the utility is unable to obtain the required certificate, and therefore is unable to make any use of the land to be condemned, this fact may sustain the burden of the party opposing condemnation to show that the proposed use is not a public use because the utility will be precluded from making any use whatsoever of the condemned property.

4. Because we find that the certificate of public convenience and necessity is not a condition precedent to a condemnation proceeding, we need not address Public Service's argument that the certificate was not necessary in this case even as to the construction of the transmission lines because, pursuant to section 40–5–101(1), Home Light was not "providing the same commodity or service" in that it did not have the capacity to serve Coors with this high voltage line.

the taking is not for a public purpose. *City of El Dorado v. Kidwell,* 236 Ark. 905, 370 S.W.2d 602 (1963); *Waynesburg S.R.R. Co. v. Lemley,* 154 W.Va. 728, 178 S.E.2d 833 (1970); 2A J. Sackman, *Nichols' The Law of Eminent Domain* § 7.17. (rev. 3d ed. 1989). *See also Shaklee v. District Court,* 636 P.2d at 718 (Erickson, J., dissenting).

Here the district court found that "the proposed condemnation in this case is for a public use or purpose." In reversing the district court, the court of appeals accepted the Shaklees' argument that "the sole purpose for which the easement was sought was to supply electrical power to operate a coal mine owned by Adolph Coors Company and that, therefore, the easement was not for a public use." *Public Serv. Co. of Colo. v. Shaklee,* 759 P.2d 774, 775. We reject the conclusion of the court of appeals.

We have recognized the difficulty of formulating a definition of public use which is applicable to the myriad of circumstances which can arise in an eminent domain case. In *Larson v. Chase Pipe Line Co.,* 183 Colo. 76, 514 P.2d 1316 (1973), we stated:

> No definition, however, has as yet been formulated which would serve as an infallible test in determining whether a use of property sought to be appropriated under the power of eminent domain is public or private. No precise line is drawn between the uses which would be applicable in all cases. Doubtless this arises from the fact that the courts have recognized that the definition of "public use" must be such as to give it a degree of elasticity capable of meeting new conditions and improvements, and the ever-increasing needs of society. [Citation omitted.] Consequently we find, in examining the authorities, that, in determining whether or not a use is public, the physical conditions of the country, the needs of a community, the character of the benefit which a projected improvement may confer upon a locality, and the necessities for such improvement in the development of the resources of a state, are to be taken into consideration.

*Larson,* 183 Colo. at 80, 514 P.2d at 1317–1318, *citing Tanner v. Treasury Tunnel, Mining & Reduction Co.,* 35 Colo. 593, 83 P. 464 (1906).

We have not previously considered the question of whether the use of a right-of-way for purposes of constructing transmission towers to carry electricity which will serve a single customer is a public use. The distinction between public and private purposes with respect to electrical power has been explained as follows:

> If electric power is capable of general distribution and of use for ordinary domestic purposes, or for the customary occupations of the inhabitants of progressive communities, the mere fact that a particular power plant will have but a single customer until the population in its vicinity develops further in numbers and in the material requirements of life is no ground for holding that the legislature has not the power to grant to its proprietors the right to exercise eminent domain in behalf of what the legislature considers the public interest.
>
> . . . . .
>
> As long as every member of the public has an equal right with all others, on equal terms, to the use of the power produced, it matters not that every person is not actually benefited thereby. Exercise of the power of eminent domain for the generation and distribution of electric power for private use, like all other takings for private use, is forbidden even though it is proposed by the condemnor to devote part of the product to public use. However, where the proposed use is unquestionably public, incidental private use will not adversely affect the legality of the taking.

2A J. Sackman, *Nichols' The Law of Eminent Domain* § 7.55[3] (rev. 3d ed. 1989) (footnotes omitted).

■ Here, although conflicting evidence was presented at trial, the evidence supports the trial court's conclusion that the condemnation was for a public use because the public has the right to use the power transmitted by these lines on equal terms with Coors. The contract between Coors

and Public Service clearly contemplated that the extended transmission line may be used to serve other customers.[5] Further, the Public Service manager of rate administration and technical services testified that Public Service had the right to serve other people from the transmission line. Although evidence was presented that Public Service had indicated to members of the community that the transmission line was the "Coors Line," and was unavailable for use by others, as a regulated monopoly Public Service is obligated to provide service to the public without discrimination. § 40–3–106(1)(a), 17 C.R.S. (1989 Supp.).

The Shaklees also make much of the fact that Coors paid for most of the cost of the construction of the transmission line and that it would be prohibitively expensive for another potential power user to pay for the necessary modifications to make use of the high voltage line. However, this fact is not crucial. Even if persons who benefit from the improvement agree to pay for it entirely, the taking of necessary property is valid as long as the use of the property is a public use. 2A J. Sackman, *Nichols' The Law of Eminent Domain* § 7.08(5) (rev. 3d ed. 1989). Thus, because others have the same right of access to use the power from this transmission line, on the same terms as Coors, the condemnation of the right-of-way across the Shaklees' land to construct the transmission lines was properly found to be a public use. *Accord Montana Power Co. v. Bokma*, 153 Mont. 390, 457 P.2d 769 (1969) (court found that acquisition by public utility of right-of-way easement across agricultural lands for purpose of constructing electrical transmission line was a public use even though the line would serve only one industrial customer).

The court of appeals, in reversing the judgment of the trial court for the reasons discussed in this opinion, found it unnecessary to consider the Shaklees' other contentions of error. Because we now reverse the court of appeals, we remand this case to the court of appeals with directions to consider the points raised by the Shaklees but not previously addressed by that court.

LOHR, J., specially concurs.

Justice LOHR specially concurring:

I join the opinion of the court but write specially to emphasize what I believe to be the narrowness of the holding. In *Miller v. Public Service Co.*, 129 Colo. 513, 272 P.2d 283 (1954), we held that a public utility need not obtain a certificate of public convenience and necessity before condemning private property for a new facility, plant or system. In the present case, we rely on *Miller* in holding that Public Service Company of Colorado (Public Service) was authorized to condemn a right-of-way for a transmission line to serve an Adolph Coors Company mine located within an area for which Home Light and Power Company (Home Light) held a certificate of public convenience and necessity. Home Light was a wholly owned subsidiary of Public Service and agreed that Public Service could provide electricity to the mine. Home Light thereafter merged with Public Service, and Public Service acquired all of Home Light's certificates of public convenience and necessity. I believe that the majority opinion must be read no more broadly than necessary to resolve the issue as presented by those facts. *Cf. Public Service Co. v. Public Util. Comm'n*, 765 P.2d 1015, 1021 (Colo.1988) ("After a utility has been assigned a specific territory, no other utility may provide service in that territory unless it is established that the certificated utility is unable or unwilling to provide adequate service.")

Although I find the rationale of *Miller* less than convincing, the rather unusual facts of the present case do not present an appropriate occasion to question *Miller's* continuing vitality or its general applicability to situations in which one public utility seeks to condemn private property to provide utility service within an area included

---

**5.** In the contract between Coors and Public Service, Public Service agreed that in the event that additional customers were connected to the facilities installed under the Coors agreement, the charge to Coors for the construction would be adjusted "by an amount reflecting the proportionate responsibility of such other uses."

within a certificate of public convenience and necessity held by another. Accordingly, I concur in the majority opinion.