**BOARD OF COUNTY COMMISSIONERS OF the COUNTY OF MORGAN, a political subdivision of the State of Colorado, Plaintiff–Appellant,**

v.

**Elmer KOBOBEL and Mariam Kobobel, Defendants–Appellees.**

No. 06CA1006.

Colorado Court of Appeals,
Div. III.

Dec. 27, 2007.

§ 24–51–1105, C.R.S.2007.

George N. Monsson, County Attorney, David W. Bute, Assistant County Attorney, Fort Morgan, Colorado, for Plaintiff-Appellant.

Anderson & Chapin, P.C., Robert B. Chapin, Brush, Colorado, for Defendants-Appellees.

Opinion by Judge ROY.

The Board of County Commissioners of Morgan County (the county) appeals the judgment of the trial court dismissing its petition to condemn a portion of property owned by Elmer and Mariam Kobobel (the owners). We affirm and remand.

The owners own Section 15, Township 4 North, Range 55 West of the 6th P.M. in Morgan County. The county sought to condemn a strip of land thirty feet wide along the northern boundary of the owners' property for use as a public road. Prior to seeking condemnation, the county unsuccessfully sought to obtain title by adverse possession (the adverse possession action).

Section 10 lies immediately north of Section 15, and the ownership of the properties along the south section line of Section 10 is divided. The westerly owner owns the southwest quarter, the middle owner owns the landlocked southwest quarter of the southeast quarter, and the easterly owner is the Riverview Cemetery Association (the cemetery association), which has been inactive for more than seventy years and owns the landlocked southeast quarter of the southeast quarter (the cemetery property).

County Road 9 runs north and south along the west section line of both sections and then turns northeast a short distance before descending approximately one hundred feet into the channel and flood plain of the South Platte River which proceeds, from northwest to southeast, just north of the westerly and middle properties and into the cemetery

property. County Road W, which would be extended by the condemned property, runs east and west, T-intersects with County Road 9, and terminates at that point.

The parcel to be condemned contains an existing "two-track" path (the field road) beginning at County Road 9 and extending east along the section line to the northeastern corner of the owner's section where it terminates at a locked gate located at the top of a bluff overlooking the river. Testimony in the adverse possession action revealed that the middle owner rarely used the field road to access her property, which is used as a pasture and whose only improvement is a corral.

The cemetery property is a forty-acre parcel, the northwest quarter of which contains several grave sites protected by a fence. The occupied portion is situated on a promontory approximately one hundred feet above the channel and floodplain of the South Platte River. Cattle graze the cemetery property outside the fence enclosing the graves. Testimony in the adverse possession action revealed that prior to 1980 the historic route to the cemetery was from the northwest, that is, up the bank of the river channel.

A few descendants of those buried in the cemetery have used the field road for access. To do so, they must park at the westerly edge of the cemetery property, crawl through the fence, and walk to the northwest corner of the cemetery property because there is no internal road.

The field road is impassable during the irrigation season and otherwise requires a four-wheel-drive vehicle. The county has stated its intention to leave the field road in its present state.

In 1997, the owners erected a locked gate at the western edge of their property and excavated ditches across the field road. After negotiations failed, the county initiated the adverse possession action to have the field road declared a public road. *See* §§ 43–1–202, 43–2–201, C.R.S.2007. The trial court's order granting summary judgment to the county was reversed on appeal. *See Bd. of County Comm'rs v. Kobobel,* 74 P.3d 401 (Colo.App.2002). On retrial, the trial court

concluded that the field road was not a public road because the county had presented insufficient evidence of proper recording, notice, or adverse use. The county did not appeal that decision. The county later acquired a thirty-foot wide right-of-way from the westerly and middle property owners in Section 10 by private agreement but negotiations with the owners failed.

The county then initiated this condemnation action against the owners and the cemetery association. The cemetery association did not appear in the trial court, no order was entered with respect to it, and it does not appear on appeal. The trial court, in a detailed and thorough order, dismissed the action as to the owners on the ground that there was no valid public use. This appeal followed.

## I.

Because it impacts the standard of review, we address a preliminary matter. The owners filed a motion in limine, which reads as a motion to dismiss, challenging, among other matters, public use. The trial court granted the motion and dismissed the action following a hearing. In our view, while such matters are to be determined in limine, *Dunham v. City of Golden,* 31 Colo.App. 433, 436, 504 P.2d 360, 362 (1972) (citing *Pine Martin Mining Co. v. Empire Zinc Co.,* 90 Colo. 529, 534, 11 P.2d 221, 223 (1932)), the proper vehicle for raising them is not a motion in limine. In this context, in limine means "[p]reliminarily; presented to only the judge, before or during trial." *Black's Law Dictionary* 803 (8th ed.2004). In modern parlance, a motion in limine refers to a pretrial motion to limit or exclude evidence. *See* CRE 103(c), 104(c); *Black's Law Dictionary* 803 ("[a motion] raised preliminarily, esp. because of an issue about the admissibility of evidence believed by the movant to be prejudicial").

Here, the motion was filed in lieu of an answer. The relief sought was dismissal for, among other reasons, the lack of a public use. This is, in effect, a motion to dismiss under C.R.C.P. 12(b)(5). When the trial court considers matters outside the pleadings, a motion to dismiss is to be considered

as a motion for summary judgment pursuant to C.R.C.P. 56. C.R.C.P. 12(b). Here, the trial court accepted exhibits, heard testimony, and took judicial notice of the evidence admitted in the prior adverse possession action.

Therefore, in our view, the trial court granted summary judgment. Our review of the granting of summary judgment is de novo. *Aspen Wilderness Workshop, Inc. v. Colo. Water Conservation Bd.*, 901 P.2d 1251, 1256 (Colo.1995).

## II.

The county contends that the trial court erred in determining that its condemnation of the owners' property lacked a valid public purpose. We disagree.

Section 43–2–112, C.R.S.2007, authorizes a county to condemn land for a county road in the manner set forth in sections 38–1–101 to—7–107, C.R.S.2007. However, the property taken must be put to a public use. Colo. Const. art. II, § 15; § 38–1–101(2)(b), C.R.S. 2007.

To begin with, we explain our analysis based on "public purpose" rather than "public use" as stated in both the federal and state constitutions. *See* U.S. Const. amend. V ("nor shall private property be taken for public use without just compensation"); Colo. Const. art. II, § 15 ("Private property shall not be taken ... for public or private use, without just compensation.... [A]nd whenever an attempt is made to take private property for a use alleged to be public, the question whether the contemplated use be really public shall be a judicial question...."). The public use test requires that the property taken be usable by the general public, while the public purpose test requires only that the overall objective of the project comprise a public benefit. *Kelo v. City of New London*, 545 U.S. 469, 479–80, 125 S.Ct. 2655, 2662, 162 L.Ed.2d 439 (2005). The United States Supreme Court rejected the public use test and adopted the public purpose test at the end of the nineteenth century. *Id.* Colorado adopted the public purpose test in the middle of the twentieth century. *Rabinoff v. Dist. Court*, 145 Colo. 225, 232–

37, 360 P.2d 114, 118–21 (1961). Therefore, our inquiry is whether the county's condemnation serves a public purpose.

There is no precise definition of public purpose; it must be determined on a case-by-case basis. *Pub. Serv. Co. v. Shaklee*, 784 P.2d 314, 318 (Colo.1989). Courts in Colorado consider the following factors: (1) the physical conditions of the land; (2) the needs of the community; (3) the character of the benefit conferred on the community; and (4) the necessity of the improvement in the development of the resources of the state. *Id.; See also Tanner v. Treasury Tunnel, Mining & Reduction Co.*, 35 Colo. 593, 596, 83 P. 464, 465 (1906). The fact that private interests may benefit from the condemnation does not defeat a public purpose. *City & County of Denver v. Eat Out, Inc.*, 75 P.3d 1141, 1144 (Colo.App.2003) (acquired property to be transferred to a private developer as an aspect of a larger public facility). Rather, the court must determine whether the essential purpose of the condemnation is to obtain a public benefit. *Id.* Furthermore, a use may be public though not many people enjoy it; the requirement is only that the improvement be open to all. *Shaklee*, 784 P.2d at 318; *Milheim v. Moffat Tunnel Improvement Dist.*, 72 Colo. 268, 273, 211 P. 649, 651 (1922), *aff'd*, 262 U.S. 710, 43 S.Ct. 694, 67 L.Ed. 1194 (1923).

The trial court concluded, and the county appears to agree, that the public purpose for the road is to provide access to the cemetery. Therefore, that is the purpose we will consider in our analysis.

The trial court considered the factors set forth in *Shaklee*. With support in the record, the trial court found that the physical conditions in the area would make it difficult to visit the cemetery in any season without a four-wheel-drive vehicle and that the county has no plans to improve the road. It also found that the cemetery association is a private entity and thus, while descendants of those interred at the cemetery have rights to visit, the cemetery is not legally open to the general public. The trial court further found that there is little public demand and no particular need for a public road across the owners' property at this time. Indeed, the

county presented no evidence as to why its existing thirty-foot strip of land acquired by private agreement from the westerly and middle owners in the adjacent section is not adequate to meet its stated objectives. Finally, the trial court found the field road unnecessary to the development of public resources because no public resources are accessible from this road and none are planned in the future.

■ The county argues that the trial court ignored important facts in its analysis. It argues that the public has a need and a right to visit the cemetery, first, because it is a cemetery; second, because it has historical and cultural significance; and third, because it is a landlocked parcel. The county argues further that because it has the authority, by virtue of section 30–11–107(1)(bb), C.R.S. 2007, to provide for the preservation of cultural, historical, and architectural history, it also has the authority to condemn land for a road to such sites. We are not persuaded.

First, the county has cited no authority for its claim, and we have not found any, that in Colorado the general public has a right to visit a private cemetery or historical or cultural sites on private land. There is no law in Colorado establishing a right of the general public to access private cemeteries, notwithstanding the county's quotation of dicta from a dissenting opinion of our supreme court. *See Retallack v. Police Court,* 142 Colo. 214, 230, 351 P.2d 884, 892 (1960) (Frantz, J., dissenting) ("ground set apart for the burial place of the dead is sacred" (quoting *City & County of Denver v. Tihen,* 77 Colo. 212, 223, 235 P. 777, 782 (1925))). Some states establish public access rights to private cemeteries by statute. *See Farm Props. Holdings, L.L.C. v. Lower Grassy Creek Cemetery, Inc.,* 208 S.W.3d 922 (Mo.Ct. App.2006) (discussing Mo.Rev.Stat. § 214.132 (2000)); *Davis v. May,* 135 S.W.3d 747 (Tex. App.2003) (discussing Tex. Health & Safety Code Ann. § 711.041 (Vernon 2003)). Courts in other states hold that access rights to private cemeteries belong to the relatives of those interred there. *See Dep't of Pub. Works & Bldgs. v. Rockwell Cemetery Ass'n,* 312 Ill. 232, 143 N.E. 875 (1924); *Hines v. State,* 126 Tenn. 1, 149 S.W. 1058 (1911); *see*

*also* 14 Am.Jur.2d *Cemeteries* § 43. None of these authorities exists in Colorado, and we perceive that providing for public access to private cemeteries is a matter best left to the General Assembly. Therefore, we find no support for the county's argument that the field road's public purpose is to provide access to the cemetery for the general public.

The county argues that a public purpose is not defeated simply because the benefit accrues to a small number of persons such as the descendants of those interred at the cemetery. We agree; however, the predicate of that rule is that the benefit must be accessible to the general public on equal terms. *Milheim,* 72 Colo. at 273, 211 P. at 651. In *Milheim,* the appellants challenged the public purpose of the planned Moffat Tunnel that would connect eastern and western Colorado under the Continental Divide. *Id.* at 271–72, 211 P. at 651. The appellants there argued that there was no public purpose, apparently on the theory that anyone who wanted to use the tunnel would have to pay for the privilege. *Id.* at 275, 211 P. at 652. The court held that the requirement that users pay did not render the use less public as long as everyone could use it substantially on the same terms. *Id.* Similarly, in *Shaklee,* the court upheld a public utility's right to condemn an easement that allowed it to deliver power to a single customer. *Shaklee,* 784 P.2d at 315–16. There, the court reasoned that the public utility was required by law to provide power to the public on demand and thus the benefit would be available on equal terms to every member of the public. *Id.* at 318–19.

Here, the essential benefit of the road, its essential purpose, is access to the cemetery. Certainly, the descendants of those buried in the cemetery will benefit from this public road. However, this benefit is not available to the general public on equal terms because, as discussed above, the general public does not have a right to enter the cemetery. While those members of the public who have four-wheel-drive vehicles or those who are willing to walk a mile could travel back and forth using the proposed public road, they will not gain the benefit of the road because they cannot exit it; it is bordered on all sides

by private land; and it does not go, and is unlikely ever to go, anywhere else. Therefore, because this benefit does not accrue to the public as in *Milheim* or *Shaklee,* there is no public benefit from the field road.

The county also argues that roads must precede development and that future users might include historians, genealogists, and persons associated with future development along the road. While development of the cemetery as a public historical or cultural resource could be a public purpose, the county has not exercised its authority under section 30–11–107(1)(bb) to develop or preserve this resource. Nor has the county presented evidence that future developments accessible to the general public are planned. Indeed, the field road is remote from municipalities or developing areas.

■ A condemnation action to support a public benefit that may never be initiated is premature. *Silver Dollar Metro. Dist. v. Goltra,* 66 P.3d 170, 174 (Colo.App.2002). In *Silver Dollar,* the district sought condemnation of the owner's land so it could perform tests to determine whether it would build a public road in that area. *Id.* The district did not know whether the road would actually be located there because that decision depended on decisions by federal and state agencies. *Id.* A divided division of this court held that a condemnation is premature when future circumstances might preclude the stated use of the land. *Id.* at 175.

Here, the county has argued that there are future public uses for the road, but it has not presented any evidence that cemetery access will be granted to the public, that future development is planned in the area, or even that the road will be improved from the overgrown two-track lane that exists now. Thus, even if the county envisions such future uses, without any plan to effectuate them, the condemnation would be premature.

The county finally argues that there is a public need to provide access to a landlocked property. We refrain from discussing access to the middle owner's property, also landlocked, because the county did not argue that need and it appears to be merely an incidental benefit of the condemnation. We agree with the county that it is not attempting to

condemn a private way of necessity and thus it is not precluded by the holding of *State Dep't of Highways v. Denver & Rio Grande Western R.R.,* 789 P.2d 1088 (Colo.1990) (government does not have authority to condemn a private way of necessity). However, we disagree with the county's assertion that the general public has a right to access land-locked, private property sufficient to justify condemnation. *See Leach v. Manhart,* 102 Colo. 129, 134, 77 P.2d 652, 654 (1938). The *Leach* court considered the right of the public to continue using a public road, not the right of a county to condemn land for a public road. *Id.* We find nothing in our case law or statutes defining access to landlocked properties as a de facto public purpose. Nor has the county argued that it has a general policy of providing access to landlocked properties that would justify this action as part of an overall public purpose.

■ Instead, we return to the few beneficiaries of the county's stated purpose for this road. The trial court found that there is little public demand and no particular need for this county road. Given the small number of beneficiaries, the lack of public accessibility to the cemetery, and the lack of an overall public plan into which this road fits, the only beneficiaries of this condemnation action appear to be a few select members of the public who have relatives interred at the cemetery. Although an incidental benefit to private parties will not defeat a public purpose, there must first be a valid, overall public purpose to the taking of private property. *Eat Out,* 75 P.3d at 1144; *see also Kelo,* 545 U.S. at 485, 125 S.Ct. at 2666 ("Quite simply, the government's pursuit of a public purpose will often benefit individual private parties."). In *Eat Out,* the public purpose was the city's art museum, while a condominium developer benefited from extra parking. *See Eat Out,* 75 P.3d at 1144. In *Kelo,* the public purpose was the economic revitalization of the city's waterfront area while private developers benefited from developing the condemned private properties. *Kelo,* 545 U.S. at 472, 125 S.Ct. at 2658.

Here, however, the public purpose is to benefit the private parties: a few, select

members of the public will gain access to a private cemetery. We agree with the trial court that such a private benefit does not constitute a valid public purpose.

Accordingly, we conclude that there was no clear error of fact or error of law in the trial court's application of the *Shaklee* factors to the evidence presented. Therefore, we agree with the trial court that the county has presented no valid public purpose for its condemnation of the owners' property. Because we affirm the trial court on the grounds discussed here, we need not address the county's additional arguments.

The owners have requested and are entitled to reasonable attorney fees and costs incurred in this appeal, to be determined by the trial court on remand. § 38–1–122, C.R.S. 2007.

The judgment is affirmed and the case remanded for a determination of the owners' reasonable attorney fees and costs incurred on appeal.

TAUBMAN and STERNBERG *, JJ., concur.

---

\* Sitting by assignment of the Chief Justice under provisions of Colo. Const. art. VI, § 5(3), and

§ 24–51–1105, C.R.S.2007.