Jack AKIN and Carol Stepe, Petitioners–Appellants,

v.

FOUR CORNERS ENCAMPMENT, Dolores River Bridge Club, Incorporated, a Colorado corporation, Twin Spruce Property Owners, Inc., a Colorado corporation, and Cordy O. Wallace, Respondents–Appellees.

No. 05CA1228.

Colorado Court of Appeals, Div. V.

April 19, 2007.

§ 24–51–1105, C.R.S.2006.

Samuel Yahn, Denver, Colorado, for Petitioners–Appellants.

Hale Friesen, LLP, Allan L. Hale, Robert T. Hoban, Jason Bradford Harms, Denver, Colorado, for Respondents–Appellees Four Corners Encampment and Dolores River Bridge Club, Incorporated.

McLachlan & Whitley, LLC, Marla C. Underell, Durango, Colorado, for Respondent–Appellee Twin Spruce Property Owners, Inc.

Kelly R. McCabe, P.C., Kelly R. McCabe, Hazen D. Brown, Cortez, Colorado, for Respondent–Appellee Cordy O. Wallace.

Opinion by Judge J. JONES.

Petitioners, Jack Akin and Carol Stepe, appeal the district court's judgment in favor of respondents on their petition seeking to condemn an easement for a private way of necessity over respondents' property pursuant to art. II, § 14 of the Colorado Constitution and § 38–1–102(3), C.R.S.2006. They also appeal the district court's order denying their motion to amend their petition to substitute a pipeline company as the petitioner, and the district court's orders awarding attorney fees to respondents.

Because we conclude that art. II, § 14 and § 38–1–102(3) do not authorize condemnation of an easement for a private way of necessity for the purpose sought by petitioners—to construct and maintain a natural gas pipeline and related connection equipment and facilities—we affirm the judgment of the district court. We further conclude that the district court did not abuse its discretion in denying petitioners' motion to amend the petition or in awarding attorney fees to respondents. We also remand for an award of respondents' appellate attorney fees.

## I. Background

Petitioners own property in Montezuma County on which a natural gas well, known as the Mary Akin # 2 well, is located. They want to run a pipeline to the Trans Colorado Interstate Natural Gas Pipeline (Trans Colorado). They claim the "only feasible route" for such a line runs north along the east side of State Highway 145 for approximately one and three-quarters miles, then along the east side of Butler Subdivision Road for approximately one and seven-eighths miles. This route crosses property owned by respondents Twin Spruce Property Owners, Inc. (Twin Spruce), Four Corners Encampment (Four Corners), and either the Dolores River Bridge Club, Inc. (Bridge Club) or Cordy O. Wallace (depending on the location of the connection to the Trans Colorado, which crosses Four Corners' and Wallace's properties).

Petitioners' Second Amended Petition sought the right to condemn an easement for a private way of necessity to construct and maintain (year round) a buried pipeline, an interconnection apparatus and facilities (including a compressor, meter run, quality control equipment, data transmission unit, small condensate tank, small lube oil tank, pig catcher, a flare line and pit, and a 200–square–foot building housing some of the foregoing), and a one-quarter-square-mile safety and environmental buffer area. Petitioners' Second Amended Petition invoked only art. II, § 14 and § 38–1–102(3) as authority for condemning the easement.

Article II, § 14 of the Colorado Constitution provides: "Private property shall not be taken for private use unless by consent of the owner, except for private ways of necessity, and except for reservoirs, drains, flumes or ditches on or across the lands of others, for agricultural, mining, milling, domestic or sanitary purposes." Section 38–1–102(3) is substantially similar to art. II, § 14.

Twin Spruce moved to dismiss the Second Amended Petition under C.R.C.P. 12(b)(5) for failure to state a claim, arguing that (1) petitioners are not within the category of persons entitled to invoke art. II, § 14 and § 38–1–102(3) because they failed to allege that they own, as opposed to lease, the Mary Akin # 2 well; and (2) as a matter of law, natural gas pipelines and related equipment and facilities are not included in the uses contemplated by the constitutional and statutory phrase "private ways of necessity." Four Corners and the Bridge Club subsequently joined in Twin Spruce's motion.

The district court granted the motion to dismiss, concluding that the phrase "private ways of necessity" does not include natural gas pipelines.

Wallace then filed a motion for summary judgment, arguing that the district court's ruling on the motion to dismiss applied with equal force to petitioners' claim vis-à-vis her property. The district court granted that motion.

After the district court granted the motion to dismiss (approximately thirteen and one-half months after petitioners commenced the

action), petitioners filed a motion requesting leave to amend their petition a third time to substitute as the petitioner GADECO–Akin Pipeline Company, Inc. (GADECO), which they had registered as a pipeline company pursuant to § 7–43–102, C.R.S.2006, less than two months earlier. Petitioners did not propose any other amendments to the petition. Respondents opposed the motion to amend. The district court denied the motion.

Respondents moved for attorney fees and costs. Respondents sought attorney fees pursuant to § 38–1–122(1), C.R.S.2006, which provides for an award of such fees "[i]f the court finds that a petitioner is not authorized by law to acquire real property or interests therein sought in a condemnation proceeding...." Petitioners contested the reasonableness of the fees and costs sought by respondents and the sufficiency of respondents' supporting documentation. The district court awarded respondents attorney fees and costs as follows: $11,217.03 in favor of Twin Spruce; $9,992.36 in favor of Four Corners; $9,365.36 in favor of the Bridge Club; and $7,022.50 in favor of Wallace.

## II. Private Way of Necessity

### A. Dismissal Before Trial

Initially, petitioners contend that the district court erred in dismissing their petition before trial because § 38–1–105(1), C.R.S. 2006, requires that all questions of necessity be decided by the trier of fact. We perceive no error.

■ Here, the district court did not resolve a factual question of necessity—that is, whether the way sought is "reasonably necessary under the facts and circumstances of the case." *West v. Hinksmon,* 857 P.2d 483, 487 (Colo.App.1992). Rather, it resolved the legal question whether the phrase "private ways of necessity" includes ways for natural gas pipelines. Nothing in § 38–1–105(1) purports to preclude a court from determining such a question of constitutional and statutory interpretation before trial. *See Boxberger v. State Highway Comm'n,* 126 Colo. 526, 531–32, 251 P.2d 920, 923–24 (1952) (sufficiency of petition for condemnation may be

challenged by motion to dismiss under rules of civil procedure).

In *Pine Martin Mining Co. v. Empire Zinc Co.,* 90 Colo. 529, 11 P.2d 221 (1932), our supreme court interpreted a predecessor statute to § 38–1–105 as permitting a court to determine, before trial, "whether or not the purpose for which the property is sought to be taken is one for which condemnation is permitted." *Pine Martin Mining Co., supra,* 90 Colo. at 534, 11 P.2d at 223. In so holding, the court distinguished between that question and the question of necessity, which is one for the trier of fact. *Pine Martin Mining Co., supra,* 90 Colo. at 534, 11 P.2d at 223–24. Because § 38–1–105(1) does not differ appreciably from the statute construed by the court in *Pine Martin Mining Co.,* we conclude that petitioners' contention is untenable.

### B. Interpretation of Article II, § 14

■ Petitioners contend that the district court erred in concluding that the phrase "private ways of necessity," as that phrase is used in art. II, § 14 and § 38–1–102(3), does not include natural gas pipelines. We are not persuaded.

The district court decided this question in ruling on a motion to dismiss and a motion for summary judgment. We review rulings on such motions de novo. *A.C. Excavating v. Yacht Club II Homeowners Ass'n, Inc.,* 114 P.3d 862, 865 (Colo.2005); *Pub. Serv. Co. v. Van Wyk,* 27 P.3d 377, 386 (Colo.2001). We also review the district court's ruling de novo because it presents a question of law. *Klinger v. Adams County Sch. Dist. No. 50,* 130 P.3d 1027, 1031 (Colo.2006); *Harwood v. Senate Majority Fund, LLC,* 141 P.3d 962, 964 (Colo.App.2006).

■ As noted, § 38–1–102(3) is substantially similar to art. II, § 14. Indeed, art. II, § 14 is the source of § 38–1–102(3). *See Coquina Oil Corp. v. Harry Kourlis Ranch,* 643 P.2d 519, 521 n. 2 (Colo.1982) (the legislature provided "for the exercise of the full scope of [the right under art. II, § 14] in section 38–1–102(3)"). Thus, this case essentially calls for us to interpret the language of art. II, § 14.

In construing a constitutional provision, our obligation is to give effect to the intent of the electorate that adopted it. In giving effect to that intent, we look to the words used, reading them in context and according them their plain and ordinary meaning. Where ambiguities exist, we interpret the constitutional provision as a whole in an attempt to harmonize all its parts.

*Harwood, supra,* 141 P.3d at 964 (citing *Bruce v. City of Colorado Springs,* 129 P.3d 988, 992–93 (Colo.2006)). "We [also] consider the object to be accomplished and the mischief to be prevented by the provision." *Harwood, supra,* 141 P.3d at 964 (citing *City of Aurora v. Acosta,* 892 P.2d 264, 267 (Colo. 1995)).

■ Article II, § 14 is " 'a general inhibition against taking private property for private use without the consent of the owner, but with certain [specified] exceptions.' " *Coquina Oil Corp., supra,* 643 P.2d at 522 (quoting *Crystal Park Co. v. Morton,* 27 Colo.App. 74, 80, 146 P. 566, 569 (1915)) (bracketed word in *Coquina Oil Corp.*). Because the power to condemn private property is in derogation of the right to own and keep property, the exceptions in art. II, § 14 must be interpreted narrowly, with any uncertainty in the ambit of the power to condemn resolved against the person asserting that power. *Coquina Oil Corp., supra,* 643 P.2d at 522; *accord State Dep't of Highways v. Denver & Rio Grande Western R.R. Co.,* 789 P.2d 1088, 1092 (Colo.1990); *Bear Creek Dev. Corp. v. Genesee Found.,* 919 P.2d 948, 953, 955 (Colo.App.1996).

■ The phrase "private ways of necessity" is not defined by constitution or statute. Nonetheless, it has been interpreted to encompass passageways or roadways necessary in the sense that they are indispensable to the practical use of the property for which they are claimed. *Tieze v. Killam,* 179 P.3d 10, 13, 2007 WL 177677 (Colo.App. No. 04CA2442, Jan. 25, 2007); *Freeman v. Rost Family Trust,* 973 P.2d 1281, 1284 (Colo.App. 1999); *Bear Creek Dev. Corp. v. Dyer,* 790 P.2d 897, 899 (Colo.App.1990); *Crystal Park Co., supra,* 27 Colo.App. at 81, 146 P. at 569. It "is a term of art which generally denotes a landlocked parcel of land." *State Dep't of Highways v. Denver & Rio Grande Western R.R. Co.,* 757 P.2d 181, 183 (Colo.App.1988), *aff'd,* 789 P.2d 1088 (Colo.1990); *see also Childers v. Quartz Creek Land Co.,* 946 P.2d 534, 535–36 (Colo.App.1997); *West, supra,* 857 P.2d at 486; *Crystal Park Co., supra,* 27 Colo.App. at 81–86, 146 P. at 569–71; *cf. Brotman v. East Lake Creek Ranch, L.L.P.,* 31 P.3d 886, 888 (Colo.2001) (referring to parcel as "landlocked" where it was "[s]urrounded on all sides by land owned by others and lacking access to the state's general road system").

■ Upon surveying the cases applying art. II, § 14, we conclude that the phrase "private ways of necessity" is limited to passageways (such as paths, bridges, and tunnels) and roadways that provide legal access connecting landlocked property to a public road. *See Bear Creek Dev. Corp., supra,* 919 P.2d at 955 ("the constitutional way of necessity is based solely on the need for access"); *Crystal Park Co., supra,* 27 Colo.App. at 82, 146 P. at 570 ("the writers of the [Colorado] Constitution attached the limitation of necessity to the taking of private property for private roadways").

Our conclusion is buttressed by the supreme court's decision in *People ex rel. Aspen M & S Co. v. Dist. Court,* 11 Colo. 147, 17 P. 298 (1888). In that case, a mining company sought to construct a tramway (or rail line) over property owned by others to transport ore to a sampling works. In upholding the denial of the mining company's petition to condemn, the court stated, after quoting the language of art. II, § 14, that "no argument is necessary to show that the taking of private property for the construction of a tramway does not fall within the exceptions specified [in art. II, § 14]...." *People ex rel. Aspen M & S Co., supra,* 11 Colo. at 155, 17 P. at 302. We perceive no meaningful distinction between the tramway at issue in that case and the gas pipeline at issue here.

Petitioners' Second Amended Petition does not allege that their property lacks legal access to a public road by foot or vehicle. Indeed, petitioners do not seek to condemn an easement to provide such access, but rath-

er to construct and maintain an underground natural gas pipeline and related equipment and facilities. Therefore, the Second Amended Petition did not identify a purpose for taking respondents' property that is within the purview of art. II, § 14 and § 38–1–102(3).

Petitioners nonetheless contend that the supreme court in *Coquina Oil Corp.* recognized, at least implicitly, that private property may be condemned pursuant to art. II, § 14 and § 38–1–102(3) for the purpose of installing an underground oil and gas pipeline. We disagree. While the petitioner in that case sought a right-of-way both for access by road and to install an underground oil and gas pipeline, the court did not address whether installation of such a pipeline was a proper purpose for condemnation under art. II, § 14 and § 38–1–102(3). The only issue addressed by the court was whether the petitioner, as a federal oil and gas lessee of the property, was within the class of persons who may assert the right to condemn private property for private use. Thus, *Coquina Oil Corp.* is inapposite.

▇ We are also unpersuaded by petitioners' contention that § 38–2–101, C.R.S. 2006—which provides, among other things, that pipeline corporations may condemn property to construct gas pipelines—is derived from art. II, § 14 and therefore evidences the right of individuals to condemn property for that purpose under the "private ways of necessity" clause. As we understand petitioners' argument, they contend § 38–2–101 extends to pipeline corporations an implicit right of individuals under that clause to condemn an easement for a gas pipeline. This contention, however, is based on an incorrect premise—namely, that the statutory right of pipeline companies to condemn property to construct gas pipelines derives from the "private ways of necessity" clause in art. II, § 14.

Several Colorado statutes permit oil and gas pipeline companies to condemn private property for a variety of uses. *See* §§ 7–43–102, 38–1–101.5, 38–2–101, 38–4–102, 38–5–104, C.R.S.2006. *See generally* § 38–1–201(2)(c), C.R.S.2006 (legislative declaration acknowledging that current laws authorizing exercise of eminent domain power make it difficult in many cases for Coloradans to determine what entities may exercise the power in a given situation); Gilbert Goldstein & Abe L. Hoffman, *Eminent Domain in Colorado,* 29 Dicta 313 (1952) (discussing the confusion engendered by the numerous, sometimes conflicting eminent domain statutes). Our review of the statutes specifically concerning condemnation for oil and gas pipelines, statutes granting similar rights to other entities, and the case law applying those statutes, convinces us that they are derived from art. II, § 15, which concerns taking property for *public* use. *Larson v. Chase Pipe Line Co.,* 183 Colo. 76, 79–80, 514 P.2d 1316, 1317–18 (1973) (under predecessor to § 38–5–105, pipeline company desiring to condemn private property to construct pipeline was required to demonstrate public use pursuant to art. II, § 15); *cf. Pub. Serv. Co. v. Shaklee,* 784 P.2d 314, 317–19 (Colo.1989) (in suit for condemnation of property to construct power line, exceptions of art. II, § 14 were inapplicable, and right determined based on whether proposed use was for a "public purpose" under art. II, § 15); *Shaklee v. Dist. Court,* 636 P.2d 715, 716–17 (Colo. 1981) (condemnation by public utility pursuant to articles 1, 2, and 5 of Title 38 requires showing of a public use under art. II, § 15); *Buck v. Dist. Court,* 199 Colo. 344, 346, 608 P.2d 350, 351 (1980) (except in specified circumstances set forth in art. II, § 14, "private property may not be condemned pursuant to statutory authority unless the purpose for which the condemnation is sought is judicially determined to be a public use within the meaning of Colo. Const. Art. II, Sec. 15").

Our conclusion stems not merely from the actual application of these provisions in prior cases, but from the fact that development of Colorado's natural resources has been recognized as a public purpose. In determining whether a proposed taking is for a public use, our supreme court has held that a court must consider

the physical conditions of the country, the needs of a community, the character of a benefit which a projected improvement may confer upon a locality, *and the neces-*

sities for such improvement in the development of the resources of [the] state . . . .
Larson, supra, 183 Colo. at 80, 514 P.2d at 1318 (emphasis added); accord Pub. Serv. Co., supra, 784 P.2d at 318. As construction of gas pipelines ostensibly concerns development of the state's resources, any proposed statutory condemnation of property to construct such a pipeline should be tested against the public use requirement of art. II, § 15. See Larson, supra, 183 Colo. at 79–80, 514 P.2d at 1317–18. Thus, the existence of any such statutory right says nothing about the scope of individuals' rights to condemn property for "private ways of necessity" under art. II, § 14.

In sum, we conclude that petitioners' Second Amended Petition did not allege a purpose for which condemnation is permitted under art. II, § 14 and § 38–1–102(3). Accordingly, the district court did not err in entering judgment in respondents' favor on the Second Amended Petition.

### III. Motion to Amend

The district court denied petitioners' motion to substitute GADECO as the petitioner because the amendment would have been unduly prejudicial to respondents, would not have cured deficiencies in the petition regarding statutory pre-filing requirements, and would have unnecessarily increased respondents' costs. Though petitioners contend the district court erred in denying their motion to amend, we perceive no abuse of discretion.

Petitioners initially argue that they were entitled to amend their petition as a matter of right. We disagree.

C.R.C.P. 15(a) provides, in pertinent part:
A party may amend his pleading once as a matter of course at any time before a responsive pleading is filed . . . . Otherwise, a party may amend his pleading only by leave of court or by written consent of the adverse party; and leave shall be freely given when justice so requires.

Here, petitioners had already amended their petition twice before they sought to amend to substitute GADECO as the petitioner. The plain language of C.R.C.P. 15(a) permits only one amendment of right before a responsive pleading is filed. Thus, petitioners did not have a right to amend. Frank v. U.S. West, Inc., 3 F.3d 1357, 1365 (10th Cir.1993); 3 James Wm. Moore, Moore's Federal Practice § 15.10 (3d ed.2006); 6 Charles A. Wright, Arthur R. Miller & Mary K. Kane, Federal Practice & Procedure § 14.80 (2d ed.2002); see Harris v. Reg'l Transp. Dist., 155 P.3d 583, 588 (Colo.App.2006) ("Because C.R.C.P. 15(a) is identical to Fed.R.Civ.P. 15(a), the federal cases interpreting the federal rule are persuasive.").

C.R.C.P. 15(a) "prescribes a liberal policy of amendment and encourages the courts to look favorably on requests to amend." Eagle River Mobile Home Park, Ltd. v. Dist. Court, 647 P.2d 660, 662 (Colo. 1982); accord Polk v. Denver Dist. Court, 849 P.2d 23, 25 (Colo.1993). This lenient policy, however, is not without limits. Polk, supra, 849 P.2d at 25. Leave to amend may be denied where, for example, the moving party has unduly delayed in seeking the amendment, the opposing party would be prejudiced if the amendment were permitted, or the amendment would be futile. Polk, supra, 849 P.2d at 25–26; Varner v. Dist. Court, 618 P.2d 1388, 1390 (Colo.1980); Ajay Sports, Inc. v. Casazza, 1 P.3d 267, 273 (Colo. App.2000).

The decision whether to permit an amendment pursuant to C.R.C.P. 15(a) is committed to the district court's discretion, and we will not reverse the district court's ruling absent a clear abuse of that discretion. Polk, supra, 849 P.2d at 25; Ajay Sports, Inc., supra, 1 P.3d at 273. A court abuses its discretion if its decision is manifestly arbitrary, unreasonable, or unfair. Colo. Nat'l Bank v. Friedman, 846 P.2d 159, 166–67 (Colo.1993); Premier Farm Credit, PCA v. W–Cattle, LLC, 155 P.3d 504, 512 (Colo.App. 2006).

Here, petitioners had already amended their petition twice, and they did not seek to substitute GADECO as the petitioner until thirteen and one-half months after they filed their original petition. During the interim, the parties vigorously litigated the case,

causing respondents to incur significant expenses. Early on in the case, respondents asserted that condemnation to construct a gas pipeline could be sought, if at all, only by a pipeline company. Yet, petitioners waited many more months to form GADECO, and they did not move to substitute GADECO as the petitioner until after the action had been dismissed as to all respondents save Wallace. Contrary to petitioners' argument, there is nothing in the proposed amendment (which was limited to substituting GADECO as the petitioner) that the court needed to consider in order to resolve Twin Spruce's then pending motion for attorney fees and costs.

Under these circumstances, we cannot say that the district court abused its discretion. *See Ajay Sports, Inc., supra,* 1 P.3d at 273; *In re Estate of Blacher,* 857 P.2d 566, 568–69 (Colo.App.1993); *Evergreen Fire Prot. Dist. v. Huckeby,* 626 P.2d 744, 746 (Colo.App. 1981).

Petitioners' reliance on § 38–1–104, C.R.S. 2006, in support of their argument that they had a right to amend their petition is too late. Petitioners did not raise this argument in the district court, and hence we decline to address it. *Rudnick v. Ferguson,* 179 P.3d 26, 32, 2007 WL 416034 (Colo.App. No. 05CA0077, Feb. 8, 2007).

## IV. Attorney Fees

Petitioners challenge the district court's awards of attorney fees to respondents. Specifically, petitioners contend that (1) Twin Spruce was not entitled to an award of attorney fees because it was not properly revived as a corporation and therefore should not have been permitted to participate in the case, and (2) the fees awarded to respondents were excessive. We disagree with both contentions.

■ Petitioners' argument with respect to Twin Spruce's participation in the case is largely incoherent. In any event, as the district court noted in rejecting this argument, petitioners stipulated to allowing Twin Spruce to substitute in as a respondent. Moreover, Twin Spruce submitted documentation to the court demonstrating that it was a Colorado corporation in good standing and

the owner of property on which petitioners sought to impose an easement.

■ Petitioners' second contention fares no better. Section 38–1–122(1) provides:

If the court finds that a petitioner is not authorized by law to acquire real property or interests therein sought in a condemnation proceeding, it shall award reasonable attorney fees, in addition to any other costs assessed, to the property owner who participated in the proceedings.

Respondents filed motions for attorney fees and costs pursuant to § 38–1–122 in accordance with the procedure established by C.R.C.P. 121 § 1–22(2). Respondents provided affidavits and other documentation supporting their requests.

■ The determination of a reasonable amount of attorney fees is a matter within the district court's broad discretion. *Denner Enters., Inc. v. Barone, Inc.,* 87 P.3d 269, 274 (Colo.App.2004). Based on our review of the record, we conclude that the district court's awards of attorney fees to respondents did not exceed the bounds of its discretion.

■ In its answer brief in this appeal, Twin Spruce requests that we correct a "mathematical mistake" in the district court's attorney fee award in its favor, invoking C.R.C.P. 60(a). We do not consider such motions made for the first time on appeal, however. Accordingly, we deny Twin Spruce's request. Nonetheless, we grant Twin Spruce leave to pursue the matter in the district court during the pendency of appellate proceedings. *See* C.R.C.P. 60(a) (mistake may be corrected while appeal is pending "with leave of the appellate court").

■ Respondents also request an award of their attorney fees incurred on appeal. We agree with respondents that an award of such fees is appropriate under § 38–1–122. *Cf. Buder v. Sartore,* 774 P.2d 1383, 1390, 1391 (Colo.1989) (prevailing party on breach of fiduciary duty claim entitled to award of fees on appeal); *Hartman v. Freedman,* 197 Colo. 275, 281, 591 P.2d 1318, 1322 (1979) (employee entitled to attorney fees incurred on appeal pursuant to § 8–4–114, C.R.S.1973, because statute did not limit fees to those

incurred in the trial court). Therefore, we remand the case to the district court for a determination of respondents' reasonable attorney fees incurred on appeal. *See* C.A.R. 39.5.

We deny petitioners' request for an award of their attorney fees and costs incurred on appeal.

## V. Conclusion

For the foregoing reasons, the judgment and orders of the district court are affirmed. The case is remanded to the district court for further proceedings consistent with this decision.

Judge VOGT and Judge ROVIRA * concur.