Edgar F. KAISER, Jr., Plaintiff–
Appellant,

v.

William A. BOWLEN; John M. Bowlen; Mary Elizabeth Jagger; Patrick D. Bowlen; PDB Sports, Ltd., a Colorado limited partnership; PDB Enterprises, Inc., a Colorado corporation; Bowlen Sports, Inc., an Arizona corporation; Hambledon Sports, Inc., an Alberta, Canada, corporation; and Hambledon Estates, Ltd., an Alberta, Canada, corporation, Defendants–Appellees.

No. 07CA0746.

Colorado Court of Appeals,
Div. II.

Oct. 2, 2008.

---

* Sitting by assignment of the Chief Justice under provisions of Colo. Const. art. VI, § 5(3), and

§ 24–51–1105, C.R.S.2007.

Shughart, Thomson, & Kilroy, P.C., G. Stephen Long, John D. Phillips, Bennet L. Cohen, Denver, Colorado, for Plaintiff–Appellant.

Reilly, Pozner, L.L.P., Larry S. Pozner, Daniel M. Reilly, Denver, Colorado; Richard P. Slivka, Denver, Colorado, for Defendants–Appellees.

Opinion by Judge FURMAN.

In 1984, plaintiff, Edgar F. Kaiser, Jr., sold to Patrick D. Bowlen a majority interest in a partnership that held the Denver Broncos franchise. More than fourteen years after the sale, in federal and in state court, Kaiser brought suit under the contract he entered into with Bowlen. The United States Court of Appeals for the Tenth Circuit decided all claims against Kaiser, and entered an order directing the federal district court to enter judgment as a matter of law in favor of Bowlen. *Kaiser v. Bowlen*, 455 F.3d 1197 (10th Cir.2006). Basing its ruling on

the outcome in the federal case, the state district court determined that issue preclusion barred Kaiser from pursuing his claims in state court, and entered summary judgment against Kaiser in favor of defendants: Patrick D. Bowlen; William A. Bowlen; John M. Bowlen; Mary Elizabeth Jagger; PDB Sports, Ltd.; PDB Enterprises, Inc.; Bowlen Sports, Inc.; Hambledon Sports, Inc.; and Hambledon Estates, Ltd. We affirm.

I. Background of Business Dealings and Previous Litigation

We begin with an explanation of the complex, lengthy transactions and litigation, spanning a period of more than twenty years, which ultimately led to this appeal.

A. Transactions

The facts giving rise to this litigation are stated in *Kaiser* and are summarized here. *Kaiser*, 455 F.3d at 1199–202.

In 1981, Kaiser bought the Denver Broncos, a National Football League (NFL) franchise, for $30 million, from Gerald and Alan Phipps. For tax purposes, Kaiser transferred ownership of the Broncos to a wholly-owned partnership, EFK Sports, Ltd. (the Partnership).

During Kaiser's first two seasons of ownership, the Broncos franchise suffered losses. Bob Adams, a friend of former head coach Dan Reeves, lent Kaiser $10 million in a transaction that permitted Adams to convert the loan into a 39.2% minority interest in the Partnership. John Adams, Bob Adams's son and successor in interest on the loan, and his business partner, converted the loan, giving them control of the minority interest.

During Kaiser's third season of ownership, the Broncos acquired the rights to John Elway, the top pick in the NFL draft and later Hall of Fame quarterback.

In 1984, Kaiser entered into a contract with Patrick Bowlen to sell Kaiser's remaining 60.8% majority interest in the Partnership for $51 million. The contract contained four provisions particularly relevant to this appeal.

First, a contract clause allowed Patrick Bowlen to transfer the majority interest to any corporate subsidiary. This clause allowed him to transfer ownership of the majority interest to a U.S. corporation, and was added so he could avoid substantial tax liability in Canada.

Second, the contract's right of first refusal (ROFR) clause permitted Kaiser to repurchase two assets—the majority interest in the Partnership and the Broncos franchise—if Patrick Bowlen offered to sell those assets to a third party, and it allowed Kaiser to repurchase them on the same terms that Bowlen offered to a third party.

Third, the contract included a standard investment representation that stated Patrick Bowlen was acquiring the majority interest for his own account, "and not as a nominee or agent."

Fourth, it contained a "survival clause," which provided that all representations and warranties terminated one year after Patrick Bowlen took ownership.

After the sale was finalized, Patrick Bowlen changed the name of the Partnership to PDB Sports, Ltd. At this point in time, he personally owned a 60.8% majority interest in the Partnership; and Bob and John Adams personally owned a 39.2% minority interest in the Partnership. The Partnership owned the Denver Broncos.

Soon after Patrick Bowlen purchased the majority interest, Bob and John Adams activated a "buy-sell" clause in their agreement with Kaiser. That clause was also included in their partnership agreement with Patrick Bowlen, forcing him either to buy the minority interest or sell the majority interest. The Bowlen family created PDB Enterprises, Inc. for the purpose of buying the minority interest. In 1985, PDB Enterprises, Inc. purchased the minority interest for $20 million. Texas Northern Productions, Inc. (TNPI) owned PDB Enterprises, Inc. and Hambledon Estates, Ltd. owned TNPI.

For tax purposes, Patrick Bowlen transferred ownership of the majority interest from himself to TNPI, and the Partnership filed an amended tax return making TNPI's ownership of the majority interest retroactive to the date of the sales agreement.

TNPI later was renamed Bowlen Sports, Inc. (BSI). We will refer to it as TNPI/ BSI.

TNPI/BSI entered into an agreement with Patrick Bowlen. The agreement provided that he would hold the partnership interest as a nominee for TNPI/BSI, backdated as of June 1, 1984.

At this point in time, the ownership interest of each of the ROFR assets was as follows:

- TNPI/BSI (majority interest) and PDB Enterprises (minority interest) owned all of the stock in the Partnership.
- The Partnership (PDB Sports, Ltd.) owned the Broncos Franchise.

Hambledon Estates, Ltd., owned TNPI/BSI. Patrick Bowlen and his siblings, William Bowlen, John Bowlen, and Mary Elizabeth Jagger, owned Hambledon Estates, Ltd.

In 1987, to comply with NFL regulations that prohibit companies with interests other than football from controlling companies that own franchise rights, Hambledon Estates, Ltd. placed nearly all of its interest in TNPI/BSI into Hambledon Sports, Inc. (HSI). HSI's only asset was TNPI/BSI. It also placed 1% of its interest in another Hambledon Estates subsidiary (HEL).

A diagram showing the ownership interests in each of the entities is contained in an appendix to this opinion.

Nearly ten years passed and, under Bowlen's management, with John Elway as the team's quarterback, the Broncos became one of the most successful teams in the NFL. The Broncos appeared in several Super Bowls, and won Super Bowl XXXII following the 1997–98 season. Before the next season started, Bowlen and Elway entered into a memorandum of understanding (the Elway option), giving Elway the option to purchase a 10% interest in TNPI/ BSI stock and to serve as an executive in the Broncos organization.

The next season, the Broncos won Super Bowl XXXIII. Elway was named the Super Bowl's Most Valuable Player. He retired after the game, and never exercised his option to buy part of TNPI/BSI.

In 1996 and 1997, for financial reasons of their own, William Bowlen and Mary Elizabeth Jagger each gave TNPI/BSI an option to purchase back their respective 25% interests of the HSI and HEL stock (the Call Options).

### B. Course of Litigation

We next describe Kaiser's litigation against Bowlen in federal and state court, beginning with the federal court.

#### 1. Federal Litigation

In 1999, Kaiser brought claims against Bowlen, PDB Sports, Ltd., TNPI/BSI, and PDB Enterprises, Inc. in federal district court, alleging, inter alia, that Bowlen breached the warranty provisions by acting as a nominee for a family company and breached the ROFR provision by failing to notify Kaiser of the Elway option. A federal jury rejected the first claim, but found in Kaiser's favor on the second claim.

On appeal, the Tenth Circuit Court of Appeals affirmed the jury's rejection of the first claim, but reversed on the second claim. The Tenth Circuit held that

the jury's verdict that the defendants breached the right of first refusal is contrary to governing Colorado law. That preferential right did not give Kaiser legal entitlement to acquire stock in a parent corporation, which is all that Elway was offered, and therefore the right of first refusal does not apply.

*Kaiser,* 455 F.3d at 1199.

#### 2. State Court Litigation

In 2002, before the federal case went to trial, Kaiser brought claims against William and John Bowlen, Mary Elizabeth Jagger, and the Bowlen family companies in Colorado state district court, alleging the ROFR clause applied to the Call Options.

Kaiser subsequently filed a first amended complaint, alleging breach of quasi-contract, unjust enrichment, intentional interference with contract, and conspiracy to commit fraud. He later filed a second amended complaint, which omitted the claim for conspiracy to commit fraud and added the defendants in

the federal case "for purposes of effecting [a] specific performance remedy" whereby Kaiser sought to divest Bowlen and the other defendants of their legal interests. Adding the federal defendants was proper, Kaiser stated, because "[t]he State Court Defendants and the Federal Court Defendants are undeniably in privity with each other" as "siblings and affiliated entities" in "contractual privity."

In early 2005, the state district court stayed the state action, ruling that the federal and state cases were "hopelessly intertwined" and that the outcome of Kaiser's federal litigation in the Tenth Circuit might preclude some of the issues in state district court.

After the Tenth Circuit issued its decision, a flurry of filings followed in the state district court. As pertinent here, Bowlen moved to lift the stay, arguing that the Tenth Circuit conclusively resolved against Kaiser the identical issue that he sought to litigate in state district court. Bowlen also filed a motion for summary judgment based on issue preclusion.

In response to the motion for summary judgment, Kaiser argued that there were disputed issues of material fact as to whether the ROFR applied to the Call Options—stock in TNPI/BSI's parent companies HSI and HEL—and this issue was not decided by the Tenth Circuit. Kaiser also requested leave to file a third amended complaint, which would have been his fourth complaint in state court.

The state district court agreed with Bowlen and granted the motion for summary judgment. The court found that Mary Elizabeth Jagger and William Bowlen sold their shares of HSI, a parent company of TNPI/BSI, and relied on the Tenth Circuit's holding that sales of parent company stock do not trigger the right of first refusal. *See Kaiser,* 455 F.3d at 1199. The state district court also denied Kaiser leave to file a third amended complaint.

Kaiser appeals the state district court's summary judgment. He also challenges the denial of his motion to file a third amended complaint. We consider his arguments in turn.

## II. Summary Judgment

"Summary judgment is a drastic remedy appropriate only when the pleadings and supporting documents show that no genuine issue as to any material fact exists and as a matter of law the moving party is entitled to summary judgment." *In re Tonko,* 154 P.3d 397, 402 (Colo.2007); *see* C.R.C.P. 56(c). We review de novo a district court's grant of summary judgment. *Tonko,* 154 P.3d at 402. "When [the court] determin[es] whether summary judgment is an appropriate remedy, the nonmoving party is entitled to the benefit of all favorable inferences reasonably drawn from the undisputed facts; all doubts must be resolved against the moving party." *Id.*

Kaiser contends the state district court erred in granting summary judgment, and the Tenth Circuit opinion has no preclusive effect in the state action, because (1) issue preclusion does not apply between a federal and state court in this case; and (2) the Tenth Circuit erroneously applied Colorado law to the ROFR clause in the contract. We disagree with each contention.

## A. Issue Preclusion

We first consider whether in this diversity case, issue preclusion applies between the federal and state court, and conclude it does.

In a diversity case, the task of the federal court is not to reach its own judgment regarding the substance of the common law, but simply to ascertain and apply state law. *Wankier v. Crown Equip. Corp.,* 353 F.3d 862, 866 (10th Cir.2003); *see also Erie R.R. Co. v. Tompkins,* 304 U.S. 64, 78, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). When a state court reviews a federal court's application of state law in a diversity case, it must give the federal judgment only the force and effect it would give to a state court judgment within its jurisdiction. *Semtek Int'l Inc. v. Lockheed Martin Corp.,* 531 U.S. 497, 507–08, 121 S.Ct. 1021, 149 L.Ed.2d 32 (2001); *see also* 19 Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, *Federal Practice*

*and Procedure: Jurisdiction and Related Matters* § 4511, at 202 (Supp.2008) (suggesting *Semtek,* which is about claim preclusion, would apply in the context of issue preclusion).

■ Issue preclusion "relieve[s] parties of multiple lawsuits, conserve[s] judicial resources, and promote[s] reliance on the judicial system by preventing inconsistent decisions." *Tonko,* 154 P.3d at 405 (quoting *Sunny Acres Villa, Inc. v. Cooper,* 25 P.3d 44, 47 (Colo.2001)). It bars relitigation of an issue when (1) the issue sought to be precluded is identical to an issue actually and necessarily determined in a prior proceeding; (2) the party against whom estoppel is asserted was a party to or is in privity with a party to the prior proceeding; (3) there was a final judgment on the merits in the prior proceeding; and (4) the party against whom the doctrine is asserted had a full and fair opportunity to litigate the issue in the prior proceeding. *Id.*

Colorado courts have accorded preclusive effect to federal rulings in diversity cases. *See Lobato v. Taylor,* 70 P.3d 1152, 1167 (Colo.2003) (applying res judicata (issue preclusion) to parties involved in prior lawsuit, despite erroneous application of Colorado law by federal court, while correcting interpretation of Colorado law with respect to new parties); *Antelope Co. v. Mobil Rocky Mountain, Inc.,* 51 P.3d 995, 1003 (Colo.App.2001)(applying issue preclusion to judgment of Wyoming federal district court to preclude litigation of the issue by defendant in Colorado state court against a different plaintiff); *Crane v. Mekelburg,* 691 P.2d 756, 759 (Colo.App.1984) (applying issue preclusion to estop relitigation of issue decided in Wyoming federal district court in a case involving a different plaintiff); *see also* 50 C.J.S. *Judgments* § 1018 (2008)("a judgment or decree duly rendered by a federal court of competent jurisdiction is binding and conclusive on the parties in all subsequent litigation between them in the state courts, and is not subject to review or reexamination on the merits").

■ The only element of issue preclusion in dispute is whether *Kaiser* actually and necessarily determined whether the ROFR clause applied to stock in TNPI/BSI's parent companies, HSI and HEL. Kaiser contends that element has not been met, and issue preclusion is inapplicable because in state court he sued over the Call Options. However, the Tenth Circuit held the ROFR did not apply to the transfer of corporate stock because the agreement only applied to particular assets—the majority interest of the Partnership and the Broncos Franchise. *See Kaiser,* 455 F.3d at 1207. Because the Call Options did not involve those particular assets, and did involve the transfer of stock, we conclude issue preclusion applies. *See Lobato,* 70 P.3d at 1167.

Nonetheless, relying on the Restatement (Second) of Judgments section 29(7) (1982), Kaiser argues that an issue is not precluded where the "issue is one of law and treating it as conclusively determined would inappropriately foreclose opportunit[ies] for obtaining reconsideration of the legal rule upon which it was based." Kaiser contends that issue preclusion should be superseded in favor of the less limiting principle of stare decisis, and that issue preclusion should not apply to the Tenth Circuit decision. However, Kaiser's reliance on section 29(7) of the Restatement is misplaced. That section, entitled "Issue Preclusion in Subsequent Litigation with Others" is inapplicable because this is not subsequent litigation with "others." In his motion to amend, Kaiser contended that the state court defendants and federal court defendants were undeniably "in privity" with each other, and were "siblings and affiliated entities" represented by the same counsel.

**B. Interpretation of the ROFR Clause**

We next consider whether the Tenth Circuit erroneously applied Colorado law to the ROFR clause in the contract, and conclude, for three reasons, it did not.

■ First, Colorado, like a majority of states, construes a ROFR clause strictly. *See In re Estate of Riggs,* 36 Colo.App. 302, 305, 540 P.2d 361, 363 (1975)(ROFR placing restrictions on sale of stock strictly construed); *see also United States v. Adkins–Phelps, Inc.,* 400 F.2d 737, 741 (8th Cir. 1968) (restrictions on sale of stock strictly

construed); *Estate of Lien v. Pete Lien & Sons, Inc.,* 740 N.W.2d 115, 120 (S.D.2007)(restrictions on sale of stock not generally favored and must be strictly construed); *Tenneco Inc. v. Enterprise Prods. Co.,* 925 S.W.2d 640, 646 (Tex.1996)("[s]ound corporate jurisprudence requires that courts narrowly construe rights of first refusal and other provisions that effectively restrict the free transfer of stock").

■ Second, the Tenth Circuit recognized a general rule that "the transfer of corporate stock does not trigger a ROFR that only applies by its text to the assets of the corporation." *Kaiser,* 455 F.3d at 1208; *see H–B–S P'ship v. Aircoa Hospitality Servs., Inc.,* 137 N.M. 626, 114 P.3d 306, 314–15 (Ct.App. 2005) (recognizing "the general rule that a sale of a subsidiary by a parent corporation is not a sale of the subsidiary's assets, unless the assets are actually transferred"); *see also United States Cellular Inv. Co. v. GTE Mobilnet, Inc.,* 281 F.3d 929, 934–35 (9th Cir.2002) (anti-transfer provisions would have been triggered by the transfer of a partnership interest, but did not restrict sale of stock, because transfer of stock is not the same as a transfer of corporate assets); *Capital Parks, Inc. v. Southeastern Advertising & Sales Sys., Inc.,* 30 F.3d 627, 629 (5th Cir.1994) (under Texas law, the transfer of parent corporation's stock and assets does not affect ownership of assets held by subsidiary); *Engel v. Teleprompter Corp.,* 703 F.2d 127, 131 (5th Cir.1983) (purchase of stock in a corporation does not constitute purchase of corporate assets, just as transfer of stock of corporation is not a transfer of its property or assets); *LaRose Market, Inc. v. Sylvan Ctr., Inc.,* 209 Mich.App. 201, 530 N.W.2d 505, 508 (1995)(holding that sale of corporate stock, standing alone, is not sale of corporate real estate triggering ROFR); *Tenneco,* 925 S.W.2d at 644–45. We agree with the general rule, which is consistent with Colorado law strictly construing rights of first refusal.

Third, the Tenth Circuit alternatively held that applying the ROFR to the Elway option would be inappropriate because it would have expanded the scope of the ROFR to include the minority interest in the Partnership, and the court was not in the business of rewriting

agreements. *Kaiser,* 455 F.3d at 1208–09; *see Colo. Intergovernmental Risk Sharing Agency v. Northfield Ins. Co.,* —— P.3d ——, ——, 2008 WL 2837517 (Colo.App. No. 07CA0058, July 24, 2008)(well-settled principles of Colorado law prevent courts from rewriting contracts). TNPI/BSI acquired the minority interest from Adams after the agreement between Kaiser and Patrick Bowlen was signed. *Kaiser,* 455 F.3d at 1208–09. As parent companies to TNPI/BSI, HSI and HEL also owned both the majority interest and the minority interest in the Partnership.

Kaiser's reliance on *Oregon RSA No. 6, Inc. v. Castle Rock Cellular Ltd.,* 840 F.Supp. 770 (D.Or.1993), *aff'd in part and rev'd in part,* 76 F.3d 1003 (9th Cir.1996), and *Williams Gas Processing–Wamsutter Co. v. Union Pacific Resources Co.,* 25 P.3d 1064, 1073 (Wyo.2001), for the proposition that ROFR clauses should be applied broadly, is misplaced. The corporate structuring of TNPI/BSI, HSI, and HEL was complete by 1987. The Call Options were not negotiated until nearly ten years later, in 1996 and 1997. The timing of these events distinguishes them from the cases relied on by Kaiser, in which the corporate reorganizations were a subterfuge to avoid the ROFR. *See Oregon RSA No. 6, Inc.,* 840 F.Supp. at 775 (stock transfer was made using shell entity created for the purpose of subterfuge, which owned no significant assets aside from the partnership interest and served only as mechanism to avoid the restrictions of the anti-transfer provisions); *Williams Gas Processing,* 25 P.3d at 1073 (ROFR was triggered when Union Pacific packaged certain assets in the form of an affiliate and sold the stock of the affiliate via a merger, which was an attempt to evade preferential purchase rights).

Accordingly, we conclude the state district court did not err in granting summary judgment because the Tenth Circuit opinion has preclusive effect in the state district court action, and sales of parent company stock do not trigger the ROFR.

## III. Motion to Amend

Kaiser last contends the state district court abused its discretion in denying his

motion to file a third amended complaint. We disagree.

■ "C.R.C.P. 15(a) governs the amendment of pleadings, and provides that where leave of court is required to amend a pleading, 'leave shall be freely given when justice so requires.'" *Civil Serv. Comm'n v. Carney,* 97 P.3d 961, 966 (Colo.2004). The rule reflects a liberal policy toward amendment, the purpose of which is "to secure the just, speedy, and inexpensive determination of every action." *Id.* (quoting *Varner v. Dist. Court,* 618 P.2d 1388, 1390 (Colo.1980)).

■ "This lenient policy, however, is not without limits. Leave to amend may be denied where, for example, the moving party has unduly delayed in seeking the amendment...." *Akin v. Four Corners Encampment,* 179 P.3d 139, 146 (Colo.App.2007) (citation omitted).

■ "The decision whether to permit an amendment pursuant to C.R.C.P. 15(a) is committed to the district court's discretion, and we will not reverse the district court's ruling absent a clear abuse of that discretion." *Id.* "A court abuses its discretion if its decision is manifestly arbitrary, unreasonable, or unfair." *Id.*

■ In 2002, Kaiser filed his original state district court complaint. In October 2002, he filed his first amended complaint. The jury in the federal district court found against Kaiser on the warranty claims, and final judgment issued in December 2004. A week after the final federal district court judgment, Kaiser filed his second amended complaint, and did not include the fraud claim. Kaiser did not attempt to file his third amended complaint, in which he primarily sought to file a fraud claim against the Bowlen siblings for the initial transfer to TNPI/BSI in 1985, until September 2006.

Kaiser contends he did not plead the fraud claim in state district court previously because he had an actionable claim relating to that transaction, for breach of warranty, against Bowlen in the federal case. Kaiser argues that, when the federal jury rejected the warranty claim, he needed to pursue the Bowlen siblings for fraud in state district court. However, given Kaiser's delay in seeking to file what would have been his fourth complaint, permitting him to amend the complaint would not have led to a just, speedy, and inexpensive determination of the action. *See Civil Serv. Comm'n,* 97 P.3d at 966; *see also Polk v. Denver Dist. Court,* 849 P.2d 23, 27 (Colo.1993) (when moving party knows of claim, and whether moving party states an acceptable reason for the delay, are important factors in determining whether to allow an amended complaint); *Krupp v. Breckenridge Sanitation Dist.,* 1 P.3d 178, 185 (Colo.App.1999)(no abuse of discretion where district court denied motion to amend complaint more than nine months after plaintiffs knew information giving rise to claim they wished to add), *aff'd,* 19 P.3d 687 (Colo. 2001); *Pallottino v. City of Rio Rancho,* 31 F.3d 1023, 1027 (10th Cir.1994)(court has often found untimeliness alone a sufficient reason to deny leave to amend, especially when the party filing the motion has no adequate explanation for the delay).

We therefore conclude the state district court did not abuse its discretion in denying Kaiser's motion to file a third amended complaint. *See Akin,* 179 P.3d at 146.

■ We reject Kaiser's argument that we are obliged to find an abuse of discretion where the state district court has not made findings in ruling on a motion to amend. Even when we are unable to determine the precise basis of a district court's ruling, we may conclude that a motion was properly denied. *See Liscio v. Pinson,* 83 P.3d 1149, 1153 (Colo.App.2003). We have carefully considered Kaiser's arguments alleging the state district court abused its discretion and we do not find them persuasive.

The judgment is affirmed.

Judge TAUBMAN and Judge BERNARD concur.

APPENDIX

The following diagram shows the ownership interests in each

of the entities:

